While the matter to be decided was heard on the return of an order to show cause, all parties have agreed and stipulated *Page 555 
in open court, not only that the above-entitled causes should be consolidated and argued and heard together, but each one also agrees that it shall be decided as if on final hearing, so that an appeal may be prosecuted and submitted to the court of errors and appeals within the shortest possible space of time and the issues raised put at rest once and for all.
In 1893 the defendant's predecessor was incorporated in this state and entered upon the shipping business in a comparatively modest way, which it continued to follow until 1902 when the present company was organized providing for a capital stock of $120,000,000, divided into six hundred thousand shares of preferred stock with a par value of $100, and a like number of shares of common stock with the same par value. There is actually issued and outstanding in the hands of the public a little more than five hundred thousand shares of preferred, and a little less than five hundred thousand shares of common stock.
That portion of the certificate of incorporation of the defendant which fixes the rights of the owners of shares of preferred stock reads as follows:
"Fourth. That the amount of the total authorized capital stock of the company is one hundred and twenty million dollars [$120,000,000], divided into one million two hundred thousand [1,200,000] shares of the par value of one hundred dollars [$100] each, of which six hundred thousand [600,000] shares shall be preferred stock and six hundred thousand [600,000] shares shall be common stock.
"The holders of the preferred stock shall be entitled to receive, when and as declared, from the surplus or net profits of the company, yearly dividends at the rate of six per centum per annum, and no more, payable semi-annually on dates to be fixed by the by-laws. The dividends on the preferred stock shall be cumulative, and shall be payable before any dividend on the common stock shall be paid or set apart; so that, if in any year dividends amounting to six per centum shall not have been paid thereon, the deficiency shall be payable before any dividends shall be paid upon or set apart for the common stock.
"Whenever all cumulative dividends on the preferred stock for all previous years shall have been declared and shall have become payable, and the accrued semi-annual installment for the current year shall have been declared and the company shall have paid such cumulative dividends for previous years and such accrued semi-annual installment, or shall have set aside from its surplus or net profits a sum sufficient for the payment thereof, the board of directors may *Page 556 
declare dividends on the common stock, payable then or thereafter, out of any remaining surplus or net profits; provided, however, that the dividends upon the common stock shall be so limited that the same shall never in any one year exceed the rate of ten per centum so long as there shall remain outstanding and unredeemed any of the four and one-half per cent. mortgage and collateral trust gold bonds of the company.
"In the event of any liquidation or dissolution or winding up [whether voluntary or involuntary] of the company, the holders of the preferred stock shall be entitled to be paid in full both the par amount of their shares and the unpaid dividends accrued thereon before any amount shall be paid to the holders of the common stock; but after the payment to the holders of the preferred stock of its par value and the unpaid accrued dividends thereon the remaining assets and funds shall be divided and paid to the holders of the common stock according to their respective shares."
On July 21st, 1927, the condition of the company was, and had been, such that no dividend had ever been declared on the common stock and so irregularly paid on the preferred stock that there were accumulations of arrears of dividends on such preferred stock amounting to approximately $70 per share. At that time there had been sold a portion of the defendant's former holdings for the sum of about $34,000,000, the purchase price being payable over a period of about three years. The property disposed of had been carried on the books of the company, including the goodwill thereof, at $80,000,000, so that there was a book loss of approximately $46,000,000 by reason of the transaction. It is undenied that the corporation is solvent.
Realizing that a continuation of the status quo could not be continued indefinitely without resultant ruin, a resolution was adopted on the said 21st day of July by the board of directors of the company setting forth the condition of the stock distribution, the opinion of the board deeming it advisable that all of its stock be readjusted and reclassified in the manner presently to be shown, and submitting to the stockholders the following scheme to accomplish those objects: The existing preferred shares were to be replaced by one hundred and twenty thousand shares of preferred stock without par value, and by six hundred thousand shares of new common stock without par value, and the existing common *Page 557 
stock was to be converted into one hundred and twenty thousand shares of common stock without par value. Upon the change being authorized, the holders of preferred stock were to turn the same in for cancellation, and were to receive in return for each five shares so surrendered one share of the new preferred stock without par value and five shares of the common stock without par value. The common stock was to be exchanged on the basis of one share of the new common stock without par value for five shares of the old par value stock. The preferred stock was to yield dividends at the rate of $6 per share annually, and such dividends were to be accumulative and have the usual preference over the common stock, namely, no dividend on the common at any time if any arrears should exist on the preferred stock dividends for any year. It was further to be provided that the preferred stock should carry the customary preference on dissolution at the rate of $100 for each share. The right of the company to redeem the preferred stock at the rate of $100 per share was given.
Notice of the stockholders' meeting was regularly given, and thereupon various of the complainants filed their respective bills, one of which was presented to Vice-Chancellor Church, who thereupon allowed an order to show cause returnable before me, and both his order and mine restrained the filing of the amendments of the certificate of incorporation or taking any step to carry the same into effect. The company was permitted to hold its meeting and vote on the proposed plan. At that meeting there were cast in favor of the adoption of the resolution of the board of directors three hundred and seventy-nine thousand nine hundred and ninety-eight shares of the common stock and three hundred and sixty-six thousand nine hundred and seventy-three shares of preferred stock, representing well above the statutory majority of each class of stock required for the adoption of the resolution. It appears that out of three hundred and sixty-nine thousand three hundred and twenty-four shares of preferred stock represented at the meeting only two thousand three hundred and sixty-one shares at the most were voted in the negative. *Page 558 
There is thus presented the familiar situation created by a very meager minority objecting to the efforts of the managers of an unfortunate industrial corporation, to extricate it from an unsatisfactory financial condition. There is no suggestion of fraud leveled at the action of the board of directors, but, in fact, an express avowal of confidence on the part of the complainants in the good faith of the managers of the company in proposing this new plan of capitalization. It clearly was their duty to make every effort to end this impossible condition of affairs, and that their intentions should be above suspicion is apparent from the fact that, although the situation has been discussed on innumerable occasions, no one had been able to formulate a feasible proposal that would be more desirable, as well as from the fact that about ninety-nine per cent. of the preferred stock represented at the meeting was voted favorably.
But the facts in this case present conditions different from any with which I have had to deal in any previous suit. There is no question of the standing of these complainants, as was the case in Windhurst v. Central Leather Co., 101 N.J. Eq. 543.
The bills were promptly filed before any change had taken place in the circumstances of the company or others, and a grave question is raised as to the legality of the scheme that has been proposed.
These complainants apply to this court for the only complete and adequate protection that can be afforded their property rights. Under the contract growing out of the section of the defendant's articles of incorporation which has been set out above, they have become vested with rights as against the holders of the common shares in a surplus of at least some $17,000,000 that the company has accumulated and also in future earnings and all the other property of the corporation. To permit the contemplated change in the certificate of incorporation would result in divesting them of those rights in violation of our law. There are now due the preferred stockholders almost $36,000,000 of accumulated dividends. The purpose of the proposed change is expressly to divest the preferred stockholders of all right to ever collect this existing claim. *Page 559 
It certainly requires no argument or explanation to show that any such change as is contemplated would result in impairing the investment value of the present preferred shares, and, consequently, would materially reduce the property rights of their respective holders. It has been urged that a proper spirit would cause these complainants to relinquish their strict legal rights in the common interest of the corporation and the other stockholders. Such an argument might well be addressed to the complainants by their fellow-stockholders, but cannot be adopted by the court. It is trite to say that one may be generous with his own property, but it is scarcely generosity to deal lavishly with that of another. The fourth section of the existing certificate of incorporation of the defendant creates a contract between the defendant and the complainants by which the latter are clothed with certain property rights having a fixed, determinate value. In place of those rights it is intended to substitute others of a less valuable character over the objection of the complainants. That they do object is conclusively shown by the filing of these bills. It is true that there would be placed in the hands of the owners of the new shares of stock issued to replace the preferred shares intended to be retired, a greatly increased power of franchise, but the complainants neither seek, nor wish, to surrender their present rights for the one offered in their stead, and it is beyond the power of the corporation, this court or the legislature to compel it.
It seems to me, notwithstanding the disagreement of the learned counsel for the defendant, the situation is controlled, so far as the rights of the preferred stockholders in the surplus is concerned, by the decision in Day v. United States Cast IronPipe and Foundry Co., 95 N.J. Eq. 389. In that case, after payment of dividends on the preferred stock for the year 1922, it was proposed to pay a dividend on the common stock out of earnings of previous years, during which previous years no dividends had been declared on the preferred stock. In the same case in the court of errors and appeals (96 N.J. Eq. 736), Judge White clearly, and, to my mind, unanswerably, explained the reason upon which the affirmance of Vice-Chancellor Backes' decision should have been placed; *Page 560 
and, as I read the opinion, it is because the legislature has declared by the eighteenth section of the General Corporation act (P.L. 1896 ch. 185) that —
* * * "the dividends upon cumulative preferred stock have at all times and for all years, past and present, until paid, priority in payment over any and all unpaid dividends upon common stock, whether the net earnings for any particular past or present year were or were not sufficient to pay the stipulated cumulative dividends upon preferred stock for that year" (pp.740, 741).
At the present time the holders of the existing preferred stock would be entitled to all of the existing surplus if the directors should decide to declare a dividend. If that stock is retired in accordance with the proposed plan, then it is readily seen that the requirements of the relatively few shares of no-par-value preferred stock might be satisfied out of a portion of the surplus, and the balance thereof devoted to a payment on the no-par-value common stock which would in part represent and stand in the place of the present common stock. This would be an indirect means of accomplishing a result that is not beyond the power of the corporation.
Not only would the change result in an injury to the future, as well as the past, dividend rights of the preferred stockholders, but it would also interfere with and materially diminish or abolish vested rights.
What has already been said renders it unnecessary to deal with questions decided in all the cases of the class commencing withKean v. Johnson, 9 N.J. Eq. 401, and ending with Allen v.Francisco Sugar Co., 92 N.J. Eq. 431. It also obviates examination of the other issues raised by the complainants, both constitutional and otherwise.
An injunction should be allowed, and in view of the stipulations referred to above it should be a perpetual writ. *Page 561