Gorman, J.
 

 The sole question is whether the amended plan of recapitalization of The National Refining Company, which was adopted by more than two-thirds of the shareholders, is of such a character that a court of equity should prevent it from being placed in operation at the instance of minority holders of the present preferred stock.
 

 If the plaintiffs, as minority stockholders, make the exchange proposed they will receive one and one-third shares of a six per cent prior preferred stock for their present eight per cent preferred stock. The stipulated'] income yield on the investment will, therefore, be thej same after the exchange as before.
 

 However, in place of the right to receive $20 in unpaid and accumulated dividends now past due, by making the exchange the stockholder will receive only three-quarters of a share of common stock, which was conceded to have a value of $6. The net loss to those who make the exchange will be approximately $14 per share. In addition, the preferred holder will have to surrender a non-callable stock for one which inay be redeemed.
 

 The Court of Common Pleas held that “the plan if adopted would destroy the rights of the holders of the presently existing preferred stock to the accumulated
 
 *572
 
 and unpaid dividends.” In reaching this conclusion the court said: “We hold that there exists a vested u right in such accumulation and in a provision contained in the articles of incorporation that the same shall be a charge upon the net profits. * * * We are /, also of the opinion that the plan proposed is compul'\sory in fact.”
 

 If the amended plan of recapitalization compelled the preferred shareholder to make the exchange and thereby suffer not only a loss of approximately $14 per share, but also have a callable stock substituted for a non-eallable one, we would have serious doubts as'to the validity of such a proposal.
 

 It is generally held that when the statutes and articles of incorporation permit, a prior preferred stock may be issued upon obtaining the vote required either by the statute or articles. See
 
 Davis
 
 v.
 
 Louisville Gas & Electric Co.,
 
 16 Del. Ch., 157;
 
 General Investment Co.
 
 v.
 
 American Hide & Leather Co.,
 
 98 N. J. Eq., 326, 129 A., 244, 44 A. L. R., 60; 11 Cornell Law Quarterly, 78.
 

 However, attempts by the majority to effect a compulsory exchange of stock that will eliminate either a sinking fund established for the benefit of the preferred holders, or to cancel unpaid accumulative dividends have been enjoined.
 
 Yoakam
 
 v.
 
 Providence Biltmore Hotel Co.,
 
 34 F. (2d), 533;
 
 Morris
 
 v.
 
 American Public Utilities Co.,
 
 14 Del. Ch., 136;
 
 Keller
 
 v.
 
 Wilson & Co.
 
 (Del.), 190 A., 115;
 
 Johnson
 
 v.
 
 Consolidated Film Industries, Inc.
 
 (Del. Ch.), 194 A., 845;
 
 Pronick
 
 v.
 
 Spirits Distributing Co.,
 
 58 N. J. Eq., 97, 42 A., 586;
 
 Lonsdale Securities Corporation
 
 v.
 
 International Mercantile Marine Co.,
 
 101 N. J. Eq., 554,139 A., 50.
 

 These decisions proceed upon the theory that a shareholder who holds preferred stock upon which there are past due and accumulative dividends has a vested right in the surplus and earnings of the corporation until the dividends are paid. These unpaid
 
 *573
 
 dividends are treated as if they were in the nature of a debt. 7 Fletcher, Cyclopedia of Corporations, 858, Section 3696.
 

 But even in New Jersey, where the vested right theory has been so frequently mentioned in a case where there was neither surplus nor earnings and the company was on the verge of bankruptcy, a consolidation was permitted which forced the preferred holders to waive their rights to accumulated >and unpaid dividends.
 
 Windhurst
 
 v.
 
 Central Leather Co.,
 
 105 N. J. Eq., 621, 149 A., 36. Under a special statute in Delaware a similar result was reached.
 
 Harr
 
 v.
 
 Pioneer Mechanical Corporation,
 
 65 F. (2d), 332.
 

 A stock certificate forms a contract between the holder and the corporation, and nothing can be done to impair its obligation.
 
 Geiger
 
 v.
 
 American Seeding Machine Co.,
 
 124 Ohio St., 222, 237, 177 N. E., 594, 79 A. L. R., 614. Of course, it might well be argued that, so .long as the majority keeps within the terms of that contract, its action should not be enjoined. Courts, as we have seen, have not permitted the majority to oppress the minority. Under the use of their equitable powers some courts have held that there are implied •limitations, although not expressly mentioned, which will not permit a serious impairment of the rights of the minority.
 
 New Haven & Derby Rd. Co.
 
 v.
 
 Chapman,
 
 38 Conn., 56;
 
 Lathrop
 
 v.
 
 Stedman,
 
 42 Conn., 583;
 
 Perkins
 
 v.
 
 Coffin,
 
 84 Conn., 275;
 
 Allen
 
 v.
 
 Francisco Sugar Co.,
 
 92 N. J. Eq., 431, 112 A., 887;
 
 Kent
 
 v.
 
 Quicksilver Mining Co.,
 
 78 N. Y., 159;
 
 In re Mt. Sinai Hospital,
 
 250 N. Y., 103, 164 N. E., 871, 62 A. L. R., 564. See also,
 
 Wright
 
 v.
 
 Minnesota Mutual Life Ins. Co.,
 
 193 U. S., 657, 663, 48 L. Ed., 832, 24 S. Ct., 549;
 
 Polk
 
 v.
 
 Mutual Reserve Fund Life Assn. of New Work,
 
 207 U. S., 310, 52 L. Ed., 222, 28 S. Ct., 65; and 44 Harvard Law Review, 1049, at page 1068.
 

 It is claimed that the cancellation of an accumulated and unpaid dividend of a preferred holder impairs a
 
 *574
 
 vested right. If there is a surplus, the action usually has been enjoined. If, on the other hand, there is a need for additional capital, the corporate necessity for continued existence overshadows the claims of the minority holders to dividends. In determining the questions courts have considered both the equities and the business situation, attempted to weigh and balance them, and then decided the controversy. Berle & Means, The Modern Corporation and Private Property, 150, 151. Adoption of this view would negative any theory of a vested right.
 

 A continued discussion of whether preferred shareholders have vested rights becomes purely academic so far as this case is concerned. In all of the cases cited, where equitable relief was obtained, a compulsory plan was proposed. In this case the plan is optional.
 

 The plaintiffs in this case are not compelled to exchange their stock. They are at liberty to retain their present preferred stock upon the same terms and conditions as they now hold it.
 

 If they do so, it will become a second preferred stock bearing an 8% dividend. When they acquired it originally they knew that by a two-thirds vote of the shareholders a prior preferred stock could be issued, and that their holdings would then become second preferred.
 

 Since there was a right contained in the articles of incorporation to issue a prior preferred stock, by a two-thirds vote, it would follow of necessity that dividends would have to be paid on such stock. The dividends on that stock would be paid in preference to dividends on the present preferred.
 

 The articles of incorporation which provide that if there are unpaid dividends on the present preferred stock “the deficiency shall be a charge on the profits and be payable, but without any interest,
 
 before any dividends shall be paid upon or set apart for the com
 
 
 *575
 

 mon stock,”
 
 are perfectly clear. Nothing in the articles guarantee that unpaid accumulated dividends shall he paid before a prior preferred stock is issued. The only agreement is that the preferred dividends shall be a charge and
 
 payable
 
 before any dividends on the
 
 common stock
 
 are declared and paid. The preference is not disturbed if plaintiffs retain their stock.
 

 Counsel for plaintiffs contend that “the preferred stockholders would be deprived, by compulsion, of about $12 per share of accumulated dividends, or a total of about $600,000, which would enure to the benefit of the common stockholders.” If the plan were compulsory that would be true. If, however, plaintiffs retain their stock and the other seventy-five per cent of the present preferred holders exchange theirs, the benefit of $450,000 of accumulated dividends which are waived will enure primarily to the plaintiffs. No dividends will or can be paid to the holders of the common until the accumulated and unpaid dividends of the preferred holders are discharged.
 

 While there will be a new prior preferred issue outstanding whose holders will receive a prior right to dividends, the present preferred holders agreed to permit such an issue if two-thirds of the shareholders so voted.
 

 As was pointed out and remains unanswered, the effect of the plan is the same as if a new prior preferred stock was sold for cash, and with the proceeds the present holders were offered a price which would be based upon a waiver of the payment of the accumulated and unpaid dividends.
 

 There were reasonable grounds for the directors and stockholders to feel that, in view of the business depression and the shrinking of the surplus, the stability of the company would be improved by a waiver of the past dividends. If the holders who exchange ffLeir stock feel that in order to enhance their chances of .securing immediate dividends it is necessary to forego
 
 *576
 
 certain rights, the plaintiffs cannot complain. In fact the complaint of plaintiffs is' in reality that a prior preferred stock should not be issued whenever there are dividends due and unpaid, no matter what the circumstances may be.
 

 If the plaintiffs retain their present stock, and in the future profits are made, but the directors fail to declare dividends on their stock, and the failure is not in good faith, adequate remedies are available to protect their interests. See
 
 Dodge
 
 v.
 
 Ford Motor Car Co.,
 
 204 Mich., 459, 170 N. W., 668, 3 A. L. R, 413;
 
 Wagner Electric Corporation
 
 v.
 
 Hydraulic Brake Co.,
 
 269 Mich., 560, 257 N. W., 884;
 
 Koral
 
 v.
 
 Savory Inc.,
 
 276 N. Y., 215, 11 N. E. (2d), 883;
 
 Tower Hill Connellsville Coke Co.
 
 v.
 
 Piedmont Coal Co.,
 
 64 F. (2d), 817.
 

 From an examination of the record which shows a depleted surplus both the Court of Common Pleas and Court of Appeals found insufficient evidence to compel a declaration of a dividend. Since the declaration of dividends is largely a matter of discretion with the board of directors, we are unable to say that they acted in bad faith. See
 
 Moorehouse
 
 v.
 
 Crangle,
 
 36 Ohio St., 130, 38 Am. Rep., 564;
 
 Lamb
 
 v.
 
 Lehmann,
 
 110 Ohio St., 59, 65, 143 N. E., 276, 42 A. L. R, 437;
 
 Wabash Ry. Co.
 
 v.
 
 Barclay,
 
 280 U. S., 197, 74 L. Ed., 368, 50 S. Ct., 106;
 
 Knapp
 
 v.
 
 S. Jarvis Adams Co.,
 
 135 F., 1008; and 76 A. L. R, 885.
 

 It is charged that by reason of the family connections of various stockholders this amended plan is in reality a fraudulent scheme on the part of the common stockholders to force the plaintiffs to waive their rights to the past dividends. The Court of Appeals in its opinion said that it was “unable to see any trace of fraud on the part of the directors.” An examination of the record by this court does not disclose any breach of fiduciary duty on the part of the directors.
 

 
 *577
 
 The contention is made that the plan cannot be sanctioned because it is contrary to the provisions of Section 8623-22, General Code, which it is said does not permit new stock to be exchanged for old stock. It is sufficient to point out that the statute permits the issuance of shares for “money or other property, real or personal, tangible or intangible.” Stock in the hands of a shareholder is certainly intangible personal property, and the statute is therefore broad enough, in the absence of an express prohibition, to include an exchange of old stock for new.
 

 . "While the amendment was adopted under the provisions of Sections 8623-14 and 8623-15, General Code, the court is of the opinion that the plaintiffs did have the right as dissenting shareholders, under the provisions of Section 8623-72, General Code, to ask for an appraisal of their stock within twenty days after the vote on the amendment was taken.
 

 If the purpose of the amendment is “to change the" express terms and provisions of any outstanding shares having preference in dividend, redemption! price or liquidation price over any other class of shares” dissenting shareholders if “substantially prejudiced thereby” shall have the rights provided under the appraisal statutes.
 

 Only those changes in the terms and provisions of stock can be made which the law permits. Therefore, all changes which can be legally made are due either to express or implied reservations in the shareholder’s contract. The words “terms and provisions” as used in Section 8623-15, General Code, are defined in Section 8623-4, General Code, in considerable detail.
 

 If the plaintiffs make the exchange they will lose approximately $14 per share on dividends, and receive redeemable instead of non-callable shares. If they re
 
 *578
 
 tain their stock, it becomes second preferred instead of first preferred, and payment of the unpaid accumulative dividends would be deferred. This would effect a change in the relative rights of the shareholders, and under the provisions of Sections 8623-4 and 8623-15, General Code, the plaintiffs, therefore, would have had all the rights of dissenting shareholders to ask for an appraisal under Section 8623-72, General Code.
 

 The remedies provided under statutes similar to Section 8623-72, General Code, were never considered exclusive unless a sale of the concern was attempted. See
 
 Geiger
 
 v.
 
 American Seeding Machine Co.,
 
 124 Ohio St., 222, 237, 238. In instances where fraud and illegality are involved it was never intended that the statutory remedy should be exclusive.
 
 General Investment Co.
 
 v.
 
 Lake Shore & Michigan So. Ry. Co.,
 
 250 F., 160, 174; 45 Harv. Law Rev., 233, 244, 247, 248; 30 Mich. Law Review, 645, 646, 647.
 

 In this case, the plaintiffs have failed to show either fraud or illegality. The plan proposed violates neither the statute nor the articles of incorporation. It is purely optional in its nature, and the majority is therefore not dispossessing the plaintiffs of any property rights. If the plaintiffs suffer loss it will be either because they voluntarily surrendered rights or because, at the time of the acquisition of their stock, they agreed to permit the majority to do exactly the thing that was done. To compel the payment of all accumulated dividends before the new prior preferred stock is to be issued would cause a serious impairment of the company’s reserves.
 

 After taking into consideration the business conditions existing we are unable to find any equitable ground upon which the courts should intervene to prevent the enforcement of this plan of recapitalization.
 

 
 *579
 
 The judgment of the Court of Appeals is therefore affirmed.
 

 Judgment affirmed.
 

 Matthias, Day, Zimmerman, Williams and Myers, JJ., concur.