**HARBINE Jr. v DAYTON MALLEABLE IRON COMPANY**

Ohio Appeals, 2nd Dist, Monegomery Co

Decided January 20, 1939

626

. John T. Harbine, Jr., Xenia, for plaintiff.
McMahon. Corwin, Landis & Markham,
Dayton, for defendant.

## OPINION

By BARNES, PJ.

The above entitled cause is now being determined as an error proceeding by reason of plaintiff's appeal, on questions of law from the judgment of the Common Pleas Court of Montgomery County, Ohio.

At the time of and prior to the bringing of the above action, the plaintiff, John T. Harbine, Jr., was the owner of 120 shares of the 7% preferred stock of said defendant company, said shares being of the par value of $100.00 each.

Said stock was authorized and was a part of issue put out in the year 1923. Under the articles of incorporation, and as contained in the stock certificates as to preferred stock, the company agreed to pay dividends at the rate of 7% per cent per annum from the first day of April, 1923, payable on the first days of July, October, January and April of each year, commencing with July 1, 1923; such dividend payments on preferred stock to be paid before any payments into the sinking fund and before any dividends were paid on any other stock of any issue. It was further provided that said dividend should be cumulative, and if any dividend thereon was not paid or fully paid at any time no dividend should be declared or paid on any other stock until all accrued and unpaid dividends on the said preferred stock were paid in full.

No dividends have been paid on the 7% cumulative preferred stock since October, 1931.

On October 28, 1935, defendant company started corporate action looking to the amendment of its articles of incorporation. All requisite steps prescribed under the Code were taken, the amendments adopted by requisite vote of the stockholders, so that on November 1, 1935, the company filed with the secretary of state, at Columbus, Ohio, as required by law, a certificate containing copy of resolution adopting the amendment to the articles of incorporation.

Thereafter on December 16, 1935, the company caused written notices to be sent to all holders of preferred stock of the defendant company, including the plaintiff, notifying them of the action of the stockholders, and requesting them to send their certificates of preferred stock to the Winters National Bank and Trust Company, Dayton, Ohio, the registrar and transferee of the defendant company, and to receive in exchange the same number of shares of the 5% preferred stock which they held and a cash dividend of 2½% on the 5% preferred, payable December 30, 1935, to stockholders of record on December 15, 1935.

The authorized capital stock of the defendant company, as originally organ-

ized, consisted og 30,000 shares of preferred stock, at $100.00 par, amounting to $3,000,000.00, and 120,000 shares of common stock, divided into 40,000 shares of Class A preferential common and 80,000 shares of Class B general common, both without a nominal or par value. This provision of the Articles of Incorporation was amended as to Article 4, and as amended reads as follows:

"ARTICLE IV. The total authorized capital stock of this corporation shall be thirty thousand (30,000) shares of preferred stock with the par value of One Hundred ($100.00) Dollars each, amounting to Three Million ($3,000,000.00) Dollars subject to the provisions and terms hereinafter set forth, and two hundred and fifty thousand (250,000) shares of common stock without nominal or par value.

That said new preferred stock when issued shall contain the following provisions:

The holders of the preferred stock shall be entitled to receive out of the surplus or net profits of the corporation, and the corporation shall be bound to pay thereon as and when declared by the Board of Directors, dividends at the rate of **five** (formerly "seven") per centum per annum and no more, cumulative from the first day of July, 1935, (formerly "April, 1923") and payable on the first days of January, April, July and October of each year, or before any payment into the sinking fund hereinafter provided for and before any dividends shall be set aside or paid on any other stock of any issue.

The dividends on the preferred stock shall be cumulative, and if any dividend thereon be not paid or fully paid at any time no dividend shall be declared or paid on any other stock until all accrued and unpaid dividends on the preferred stock (formerly the word "stock" omitted) be paid in full. Upon the liquidation, abandonment surrender or dissolution of the corporation, whether voluntary or involuntary, or upon any distribution of any of its assets by way of return of capital, the holders of the preferred stock shall be entitled to receive and be paid One Hundred (100%) per cent [formerly "One Hundred Twenty (120%) per cent"] of the par value thereof, plus all accrued and unpaid dividends thereon before any amount shall be paid to the holders of any other stock issued by said corporation."

The resolution contained many other provisions, but at this time we do not consider them sufficiently pertinent to the present inquiry to quote them in full.

Contemporaneously with the adoption of the amendment, a resolution was presented and adopted, which, among other things, contained in substance the following:

Class A preferential common and Class B general common were to be surrendered and new common stock issued at the rate of two shares for every one of Class A preferential and one share of new common for every two shares of Class B general common.

The preferred stock outstanding to be exchanged for the same number of shares of new preferred, such certificates to have printed thereon the condition affecting such stock as contained in the amended Certificate of Incorporation.

Also the further provision, which is quoted in full:

"(c) That the corporation issue one share of the new common stock for each and every share of preferred stock outstanding, to be received by the holders of said preferred stock in full payment of the cumulative dividends due on said preferred stock and which on July 1, 1935, aggregated $24.50 per share."

Following the amendment, all outstanding shares, both preferred and common, were exchanged for new preferred and common, in accordance with the resolution, except the 120 shares of 7% cumulative preferred of plaintiff.

Since the reorganization through the amendment aforesaid, the defendant company has paid all dividends on the newly issued 5% preferred and stands willing and able to pay plaintiff, upon his surrender of his 7% preferred in exchange for the new issue. Dividends have also been paid on the newly issued common.

Plaintiff, in his petition, prays that the defendant company be restrained and enjoined from paying any further dividend or dividends upon any of its common stock so long as any dividend or dividends on its 7% preferred stock, which is owned by plaintiff, have not been fully paid, this to include all future dividends which may hereafter accrue or become due, as well as those which have already accrued or become due.

Defendant, in its answer, admits practically all the allegations of fact as contained in plaintiff's petition, and then

sets forth, as an affirmative defense, a claimed full and exact copy of the actions, proceedings, resolutions, etc., through which the claimed amendment to the Articles of Incorporation was adopted and put in force.

The answer also contains the further averments as to the transfer of all the old stock for new stock, except the 120 shares of the 7% cumulative held by plaintiff.

Plaintiff filed a general demurrer to defendant's answer, which was overruled, and plaintiff, not desiring to plead further, his petition was dismissed and judgment entered in favor of the defendant for his costs.

This is the final order from which error is prosecuted to this court.

It is the claim and contention of plaintiff that the certificate of stock issued to him constituted a contract, and that he is entitled to all rights accruing to him under its express language. That said certificate calls for payment of 7% dividend, payable quarterly and also contained the cumulative provision. Further, that under the express terms of this certificate no dividends were to be paid so long as any dividends on preferred stock remained unpaid. That dividends on the 7% cumulative preferred not having been paid since 1931, and the company having admittedly paid dividends on the new common, plaintiff is thereby entitled to relief. Plaintiff further claims that defendant's attempted amendment to its articles of incorporation is in derogation of the Constitution of the state of Ohio and the Federal Constitution. Further, that the Legislature would have no power to authorize amendments which in fact would take away from plaintiff contractual rights previously acquired.

The courts have universally held that a stock certificate issued by a corporation is a contract between the ██ corporation and the holders of the certificate of all classes of stock. **Geiger v Seeding Machine Company, 124 Oh St 222.**

However, it has been universally held that the contractual status is not limited to the language of the certificate, but pertinent provisions of the state constitutions and enacted laws of the state legislature in conformity thereto are just as much a part of the contract as are its words.

This principle is announced by the Supreme Court of the United States in the case of Trustees of Dartmouth College v Woodward, 17 U. S., 518, decided in 1819.

"A charter granted by a state, granting corporate powers, constitutes a contract between the state and the corporation, the obligation of which can not be impaired by an alteration, amendment or repeal of such charter without the consent of the corporation, unless the power of amendment or repeal was expressly reserved by the state."

The above quotation is taken from the case of **Allen v Scott, 104 Oh St 436–439.**

Further quoting from the opinion of Judge Marshall, on page 439:

"For more than one hundred years the doctrine of that case has been accepted and applied and is today firmly established as a legal principle. In the concurring opinion of Judge Story in that case there was a suggestion of a reservation of the power of alteration or repeal, and soon after the case was decided many states of the Union began to insert in their constitutions and statutes relating to the organization of corporations provisions for reserve power and control of corporations by making all charters and laws subject to alteration, amendment or repeal. The effectiveness of those provisions in state laws and constitutions has many times been recognized by the Supreme Court of the United States, notably in the cases of Greenwood v Union Freight Rd. Co., 105 U. S., 13, and Looker v Maynard, 179 U. S., 46. From the latter case, at page 52, we quote: 'The effect of such a provision, whether contained in an original act of incorporation, or in a constitution or general law subject to which a charter is accepted, is, at the least, to reserve to the legislature the power to make any alteration or amendment of a charter subject to it, which will not defeat or substantially impair the object of the grant, or any right vested under the grant, and which the legislature may deem necessary to carry into effect the purpose of the grant, or to protect the rights of the public or of the corporation, its stockholders or creditors, or to promote the due administration of its affairs.'"

The Constitution of the State of Ohio, under Article 13, §2 provides for these reserve powers.

"Corporations may be formed under general laws, but all such laws, may from time to time, be altered or repealed."

Of course, the above provision of the Ohio Constitution is not self-executing. It is the authority for legislative enactment. Such amendments or alterations may also be accomplished by amendments to the Constitution, as was held in the case of Allen v Scott, 104 Oh St 436.

In 1927 the Ohio Legislature enacted what is known as the New Corporation Act, §§8623 to 8623-125, GC, inclusive.

Sections 8623-14, 8623-15 and 8623-72 are cited as applicable to the facts in the instant case.

Sec. 8623-14 is the section pertaining to amendments to articles of incorporation. Among other things, this section contains the following:

"In particular, without prejudice to the generality of such power of amendment, a corporation may by amendment:

(f) Change issued or unissued shares of any class whether with or without par value into a different number of shares of the same class, or into the same or a different number of shares of any other class or classes with or without par value, theretofore or thereby created.

(i) Change the express terms and provisions of any class or classes of shares; or of any series;"

It has been definitely determined by Ohio Courts that under the reserve power expressed in the Ohio Constitution as to alterations and amendments and legislative enactments providing for amendments, that proper amendments when authorized and made in conformity to law become a part of the contract between the stockholder and the corporation. Williams v National Pump Corporation, 46 Oh Ap, 427; Allen v Scott, 104 Oh St, 436; Geiger v Seeding Machine Company, 124 Oh St, '22; Johnson v Lamprecht, 133 Oh St, 567, 11 OO 297.

We find this same principle universally announced in many other jurisdictions within the United States.

Counsel for plaintiff urge that this law should not be applicable to him for the reason that his stock was issued and outstanding before 1927, when the new Corporation Law was enacted containing the first legislative provision for amendment and alteration of corporation charters. He further reasons that while he was not a stockholder until 1929, that nevertheless his status would be the same as was that of the previous owner through whom he secured his stock.

Counsel for the defendant urge that the pleadings do not disclose that plaintiff's stock was issued to the prior owner before 1927; and further, plaintiff would not be entitled to relief even if issued to the prior owner in 1923.

The case of Williams v National Pump Corporation, 46 Oh Ap, 427, is directly in point on one phase of the instant case. This case was decided by the Court of Appeals of this district and certification to the Supreme Court was denied. 126 Oh St, 457. The reported case dealt with an amendment to the corporation's charter among other things changing preferred stock to common stock. It was held that such action was authorized under the reserved power.

Probably the case is to be distinguished from the instant case in that it is inferable in the reported case that the original issue of the stock to the complaining party was subsequent to the enactment of the New Corporation Code, whereas in the instant case it is inferable that the original stock was issued to the predecessor in title of the plaintiff prior to the enactment.

We do not think this difference in facts in the two cases will alter the principle.

It has been generally held and we know of no exceptions to the rule, that a purchaser of corporation stocks takes it with full knowledge that provisions contained in the certificate may be altered or amended. Such has been the provision of the Ohio Constitution for a great number of years. Even when the provision of the Constitution was not effective because the Legislature has not acted thereunder, nevertheless purchasers of stock are chargeable with notice that the Legislature may make provisions for amendments and alterations and when made all certificates of stock, whether issued before or after, are brought within its provisions. We again cite Allen v Scott, 104 Oh St, 436.

The question that has caused considerable litigation not only in this state but in other jurisdictions, is not so much a question of the right of alteration or amendment, but whether or not the particular alterations and amendments were authorized or legal. The case of Geiger v Seeding Machine Company, 124 Oh St, 222, will illustrate the principle.

This case did not involve alterations

or amendments to the charter, but rather a sale and distribution of the proceeds. This case arose in Clark county, Ohio, The Ohio corporation, located in Springfield, sought to sell all its assets, including its corporation stock to another corporation and to receive as payment therefor stock in the purchasing company. All the requisite steps were taken to complete the sale.

. Minority preferred stockholders objected and brought action. The Supreme Court sustained the sale as being authorized by §8623-65, **GC**, and compliance therewith, but held that there was no authority under this section to make provision for distribution of the new stock to be issued.

We determine that the defendant corporation by virtue of §8623-14, **GC**, and particularly paragraphs (f) and (i), had the right to amend the articles of incorporation whereby preferred shares might be changed to a new share with terms and provisions altered.

In other words, the change of the 7% cumulative preferred stock could be and was legally ordered transferred to the new 5%.

At to this provision plaintiff's remedy was under §8623-72, **GC**. In substance this section provides that if any dissenting stockholder feels agrieved, he may demand and receive the value of his stock, including accrued dividends, in cash. However, action under this section must be taken within twenty days, which was not done in the instant case.

. We have another and further question that gives us more concern and that is upon the question of the accrued, undeclared and unpaid dividends.

. It appears from the pleadings that dividends have not been paid for about three and a half years. These accrued dividends amount to $24.50 per share. The amendment and accompanying resolution attempted to provide for these accumulated dividends in the following clause of the resolution:

"(c) That the corporation issue one share of the new commmon stock for each and every share of preferred stock outstanding, to be received by the holders of said preferred stock in full payment of the cumulative dividends due on said preferred stock and which on July 1, 1935, aggregated $24.50 per share."

We are unable to find that §8623-14, **GC**, or any other section of the corporation code,

makes any provision for taking care of cumulative dividends.

The claim may be advanced that the undeclared cumulative dividends are an integral part of the stock and are not separable therefrom. The law is well established that the right to dividends follows the stock. In a measure the Supreme Court, in the case of **Johnson et v Lamprecht et, 133 Oh St, 567, 11 OO 297** had under consideration this question, but the decision finally turned upon a finding in that case that the plan of recapitalization gave to the defendant stockholders the option of retaining their stock with all rights and privileges and under that situation held that the dissenters were relegated to their remedy under §8623-72, **GC**. On page 572 of the opinion, Judge Gorman, makes the following observation.

"However, attempts by the majority to effect a compulsory exchange of stock that will eliminate either a sinking fund established for the benefit of the preferred holders, or to cancel unpaid cumulative dividends have been enjoined."

Yoakam v Providence Biltmore Hotel Co., 34 F. (2d), p. 533; Morris v American Public Utilities Co., 14 Del Ch., 136; Keller v Wilson Co. (Del.) 190 Atl. 115; Johnson v Consolidated Film Industries, Inc., (Del. Ch.) 194 Atl. 845; Pronick v Spirits Distributing Co., 58 N. J. Eq., 97, (42 Atl. 586); Landsdale Securities Corporation v International Mercantile Marine Co., 110 N. J., Eq., 354 (139 Atl., 50).

A reading of the entire opinion will be found interesting and helpful.

. In New Jersey and Delaware it has been directly held that a stockholder has a vested interest in cunmulative dividends, and that the same may not be taken away from him through alteration or amendment.

We have difficulty in following the designation "has a vested interest." However, by whatever name known, it is an existing, substantial right, and has a prospective value. Whether or not it will ever materialize, depends on whether or not the company makes profits in such an amount as to be available to pay the current and cumulative dividends.

The company recignized a separate status as to these cumulative dividends by providing for their payment in common stock [see paragraph (c)] above quoted in full. No option was given to the holders of preferred stock, except to accept the common stock or possibly resort to their remedy under

§8623-72, GC. Judge Gorman in his opinion in the case of **Johnson v Lamprecht,** supra, at page 578, makes the following comment:

"In instances where fraud and illegality are concerned, it is never intended that the statutory remedy should be exclusive."

General Investment Company v Lake Shore & Michigan Southern Ry. Co., 250 F., 160, 174; 45 Harvard Law Review, 233-244, 247-248; 30 Michigan Law Review, 645, 646, 647.

Being of the opinion that no sections of the Corporation Act provide for cumulative undeclared dividends, we hold that the attempted action was illegal, and therefore the remedies under §8623-72, GC, are not exclusive.

The trial court was right in overruling plaintiff's demurrer to defendant's answer, but was in error in entering judgment on the pleadings.

Plaintiff is not entitled to all the relief for which he asks, but since it is a conceded fact that dividends have been paid on common stock since the reorganization, he is entitled to an injunction against the further payment of dividends on the common stock until such time as his cumulative dividends up to the time of reorganization have been paid. Plaintiff is not entitled to have the order continued so as to cover claimed dividends after the reorganization. Under this situation plaintiff would not be entitled to the common stock proposed to be issued in lieu of preferred cumulative dividends. Plaintiff upon surrender of his stock will be entitled to a like number of shares of the new 5% preferred stock. The cause is remanded for further proceedings according to law.

HORNBECK and GEIGER, JJ, concur.