UNITED ARTISTS THEATRE CIRCUIT, INC., PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 106804.   Promulgated January 5, 1943.

*T. N. Lawler, Esq.*, and *A. F. Driscoll, Esq.*, for the petitioner.
*H. C. Clark, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge:* Respondent determined that the dividend of $450,000 declared on May 17, 1937, of which $377,430 was distributed to stockholders in the tax year, was preferential within the meaning of section 27 (g) of the Revenue Act of 1936:

(g) PREFERENTIAL DIVIDENDS.—No dividends paid credit shall be allowed with respect to any distribution unless the distribution is pro rata, equal in amount, and with no preference to any share of stock as compared with other shares of the same class.

The correctness of that determination is the only issue.

Examination of the briefs of the respective parties reveals that the principal dispute between them centers in the rights of the preferred shareholders in connection with the recapitalization. Respondent proceeds upon the assumption that the shareholders had a right of election either (a) to take part in the recapitalization, exchange their shares, and receive the $15 dividend in settlement of accrued dividends, or (b) to retain their old certificates, together with the right to dividend arrearages thereon. He states on brief:

\* \* \* The only manner in which the holders of 3,717 shares of the 7% preferred stock could obtain $15 per share was by their electing to give up their right to more than double that amount per share due them in unpaid accumulated dividends, and also by agreeing to cancel the stock which they held and exchanging this stock for new shares.

Petitioner denies that the holders of the 3,717 shares of old preferred stock which had not been converted by the end of the tax year had any such election, and takes the view that the amendment of the articles

of incorporation was binding upon all shareholders. Reliance is placed upon article 23, section 28, of the Maryland Code, which was in effect both at the time petitioner was incorporated and on May 17, 1937, reading in part as follows:

\* \* \* No amendment of the charter of a corporation shall be valid which changes the terms of any of the outstanding stock by classification, reclassification or otherwise, *in the absence of a reservation in the charter of the right to make such amendment*, unless such change in the terms thereof shall have been authorized by the holders of all of such stock at the time outstanding, \* \* \* The word "terms" as used in this section in reference to stock is intended to mean only the contract rights of the holders thereof as expressed in the charter and shall be so construed. [Emphasis supplied.]

By the terms of the original charter, as quoted in our findings, petitioner reserved the power to alter the preferences existing in its preferred stock by the affirmative vote of holders of two-thirds of the preferred shares. The required two-thirds vote was obtained for the amendment under consideration.

The rights of the preferred stockholders, of course, were governed by the law of the state where the corporation was organized, Maryland. The only case cited, or that we have been able to find, construing the quoted section of the Maryland Code as applied to substantially similar facts is *McQuillen* v. *National Cash Register Co.*, 27 Fed. Supp. 639, 645, 646; affd., 112 Fed. (2d) 877; certiorari denied, 311 U. S. 695. The United States District Court for the District of Maryland there held that a plan of recapitulation approved by a two-thirds vote of the stockholders, in accordance with a reservation in the corporate charter similar to the one before us, was valid and binding upon all the stockholders, even though it entailed the cancellation, as in the present case, of a portion of the accumulated dividends. The District Court stated that the Maryland Court of Appeals had not passed upon the question, and this, so far as we know, remains true today. There are decisions to the contrary in other states, which arose under somewhat analogous statutes, as the court in the *McQuillen* case recognized.[1]

Nevertheless, in the absence of a declaration by the Maryland courts and in view of the position recently taken by the Supreme Court

[1] *Buckley* v. *Cuban American Sugar Co.*, 129 N. J. Eq. 322; 19 Atl. (2d) 820, 823; *Lonsdale Securities Corp.* v. *International Mercantile Marine Co.*, 101 N. J. Eq. 554; 139 Atl. 50; *Consolidated Film Industries* v. *Johnson*, 22 Del. Ch. 407; 197 Atl. 489, 493; *Keller* v. *Wilson & Co.*, 21 Del. Ch. 391; 190 Atl. 115; *Shanik* v. *White Sewing Machine Corporation*, 19 Atl. (2d) 831, 835; *Davison* v. *Parke, Austin & Lipscomb, Inc.*, 285 N. Y. 500, 35 N. E. (2d) 618; *Wiedersum* v. *Atlantic Cement Products*, 261 App. Div. 305; 25 N. Y. S. (2d) 496, 501; *Breslav* v. *New York & Queens Elec. L. & P. Co.*, 249 App. Div. 181; 291 N. Y. S. 932; *Patterson* v. *Durham Hosiery Mills*, 214 N. C. 806; 200 S. E. 906; *Harbine* v. *Dayton Malleable Iron Co.*, 61 Ohio App. 1; 22 N. E. (2d) 281; *Johnson* v. *Lamprecht*, 133 Ohio St. 567; 15 N. E. (2d) 127. Cf. *Johnson* v. *Bradley Knitting Co.*, 228 Wis. 566; 280 N. W. 688; *Harr* v. *Pioneer Mechanical Corporation*, 65 Fed. (2d) 332; certiorari denied, 290 U. S. 673.

in *Helvering* v. *Stuart*, 317 U. S. 154, we feel impelled to accept the opinion of the Federal Judge for the District of Maryland as to what the law of that state is. The Supreme Court declared in the *Stuart* case that the conclusion of a Federal court as to state law, while not resting upon statute or a satisfying line of state decisions, nevertheless represented "the reasoned judgment of the circuit which includes Illinois in which a judge of long experience in the jurisprudence of that state participated. Without a definite conviction of error in the conclusion, this Court will not reverse that judgment." We know of no reason why we should not likewise adopt the reasoned judgment of the District Court for Maryland, and respondent has not suggested any.

The effect of this holding is that all of petitioner's preferred shares, including those represented by certificates which had not been surrendered by the end of the fiscal year, were automatically converted into shares with different preferences and rights by the amendment to the charter. It follows that the principal ground for respondent's determination is untenable, for it is not true that to receive the dividend the shareholders were required to agree to a conversion of their shares and to cancel accrued dividends due them; the stock, as distinguished from the certificates, had already been converted, and the stockholders were entitled to no more than the $15 dividend which was made available to them. It was the outmoded certificates, not the stock itself, that the company desired to have surrendered for cancellation.

Viewed in this light, we think the distribution was not preferential. It is true that some of the shareholders had not received the dividend by the end of the tax year, but section 27 (g) does not say that a distribution is preferential unless each stockholder receives his pro rata share during the same taxable period. Of course, a credit is available only for dividends paid in the tax year, but for present purposes petitioner will be satisfied by a credit from this source for the $377,430 that was actually received by stockholders during the year. It is thus unnecessary to consider whether the balance of the dividend in the hands of the Chase National Bank was unqualifiedly subject to the stockholders' demands and therefore constructively received by them, a question discussed by both parties on brief. It could perhaps be said that the dividend was so far made available to them that they merely turned their backs upon income which they were free to enjoy, though, as stated, we need not go so far in this case. It is sufficient to hold that the requirement of surrendering invalid certificates as a prerequisite to receiving the dividend, a requirement that applied uniformly to all stockholders, did not render the distribution preferential.

We do not regard the case of *Black Motor Co.* v. *Commissioner*, 125 Fed. (2d) 977, affirming 41 B. T. A. 300, upon which respondent relies, as opposed to the present disposition. In that case the taxpayer declared a dividend but, for some reason not appearing in the reports, paid only 25 and 50 percent of their pro rata shares to certain stockholders, while paying the full share to the two principal stockholders. The distribution was held to be preferential, the court saying that the word "distribution" "means the act of distributing or dispensing and distribution pro rata means a payment to all entitled to take and not a payment of the total amount due one and a part of that due another." This language, in our opinion, broad though it is, should not be construed to deny a credit for amounts actually distributed where, as here, the dividend for all stockholders was irrevocably set aside and made available to them at any time they desired to present their certificates for cancellation. In the *Black* case, so far as appears, the corporation was responsible for and intended the unequal distribution. The requirement in the instant case that the certificates be surrendered invaded no substantive rights of the stockholders.

It may be observed that minor changes were made in subsection 27 (g), which became subsection (h) in the 1938 Act, and the Ways and Means Committee stated in part as follows in House Report 1860, 75th Cong., 3d sess., p. 23:

Subsection (h) of the bill, relating to "preferential dividends", has the same purpose as section 27 (g) of the existing law * * *. No dividends-paid credit should be allowed in the case of a distribution not in conformity with the rights of shareholders generally inherent in their stockholdings, whether the preferential distribution reflects an act of injustice to shareholders or a device acquiesced in by shareholders, rigged with a view to tax avoidance. * * * The committee believes that no distribution which treats shareholders with substantial impartiality and in a manner consistent with their rights under their stockholding interests, should be regarded as preferential by reason of minor differences in valuations of property distributed.

These observations do not cover the precise issue before us, but they lend support to our conclusion that where a distribution is made available in conformity with the rights of each stockholder, where no act of injustice to any stockholder is contemplated or perpetrated, where there is no suggestion of a tax avoidance scheme, and where each stockholder is treated with absolute impartiality, the distribution is not preferential within the meaning of the statute.

*Decision will be entered under Rule 50.*