RUFUS L. PATTERSON, JOHN F. WILY AND J. LATHROP MOREHEAD, TRUSTEES, AND THE FIDELITY BANK, TRUSTEE BY ASSIGNMENT, ON BEHALF OF THEMSELVES AND ALL THOSE SIMILARLY SITUATED, v. HENRIETTA MILLS.

(Filed 3 January, 1940.)

**Corporations § 16—Right to accrued preferred dividends may not be defeated by charter amendment.**

Plaintiffs were holders of preferred stock in defendant corporation entitling them by provision of the charter to cumulative dividends before dividends should be set aside or paid on any other stock theretofore or thereafter issued. The charter further provided that no stock having priority over or equal to the preferred stock should be issued without the consent of holders of 75 per cent of such preferred stock. By charter amendment, approved by the holders of over 75 per cent of the preferred stock, the corporation effected a reorganization providing for an exchange of new preferred stock having a lower dividend rate for the old preferred stock and terminating the right to accrued dividends on the original stock. *Held:* There being nothing in the original charter agreeing to retroactive annulment of the vested right to accrued dividends, the right thereto cannot be destroyed except by consent on the part of the stockholders

adversely affected, no matter how few in number, and judgment of involuntary nonsuit in the action of holders of preferred stock to protect their rights was improperly entered.

APPEAL by plaintiff from *Ervin, Special Judge,* at October Term, 1939, of DURHAM.   Reversed.

*A. W. Kennon, Jr., and Marshall T. Spears for plaintiffs, appellants.*
*Smith, Leach & Anderson, Robert M. Gantt, and John E. Lawrence for defendant, appellee.*

SEAWELL, J.   The plaintiffs, some of them directly and others in a trust capacity, were the holders of 134 shares of 7% preferred stock in the defendant corporation bearing cumulative dividends at the rate of 7%.   At the time of this action, dividends had accrued in the amount of $10,251.00.

They brought this action to have a corporate reorganization, with amendments to the charter, declared invalid as to them, to protect their right to accrued dividends on preferred stock claimed to be unlawfully invaded or defeated by the reorganization, to have the same paid prior to the payment of dividends on reorganization stock, and to restrain defendant from prior payment of such dividends on the new stock until dividends on the plaintiffs' preferred stock should have been paid.

Dating from 1923, and by amendment, the corporate charter, under which the plaintiffs held this stock, provided:   ". . .   The holders of said Preferred stock are entitled to receive, and the Company is bound to pay, a fixed, annual, guaranteed, cumulative dividend at the rate of, but not exceeding, 7% per annum, payable quarterly on the first days of October, January, April and July of each year, before any dividends shall be set apart or paid on any other stock, preferred or common, heretofore or hereafter issued by this corporation.   The corporation shall not, without the consent of the holders of 75% or so much of this issue of the Preferred stock as may then be outstanding, be entitled to create any lien, directly or indirectly, upon its real estate or manufacturing plant upon any account whatsoever, or to issue stock having priority over or equal rank with this issue of Preferred stock   . . ."   (R., p. 11).

After certain negotiations, and after consideration of various plans of reorganization, on 18 August, 1937, a reorganization plan was adopted, by a vote of more than the 75% required by the charter.   This plan provided for the issue of new preferred stock bearing cumulative dividends at a lower rate, and provided a method of substitution of the new stock for prior preferred stock, or a change in existing stock.   The intention and effect of the reorganization is, to quote from the charter

amendment: ". . . intending by this Amendment wholly to eliminate, cancel and terminate the rights appertaining to said shares of Preferred Stock of the par value of $100 per share and said shares of Common Stock of the par value of $100 per share, including the right of the holders of such Preferred Stock of the par value of $100 per share to receive any dividends now accrued and in arrears thereon and to substitute for any such rights so eliminated, canceled and terminated the rights which pursuant to the provisions herein set forth shall appertain to the shares into which the said shares of Preferred Stock of the par value of $100 per share and said shares of Common Stock of the par value of $100 per share shall be and hereby are changed as aforesaid."

Under the 1923 amendment to the corporation charter new issues of preferred stock might be made "having priority over or equal rank with" the issue of preferred stock then held by plaintiffs or those preceding them in title, but there is nothing in the charter contract to make such action retroactive so as to defeat the vested right of plaintiffs in accrued cumulative dividends agreed to be paid "before any dividends shall be set apart or paid on any other stock, preferred or common, heretofore or hereafter issued by the corporation," *Patterson v. Hosiery Mills,* 214 N. C., 806, 200 S. E., 906; nor does such a charter provision warrant a plan of reorganization which provides for cancellation of prior stock issues and accrued dividends thereon and the arbitrary substitution of other stock of less total value and bearing less dividends, or the drastic changes in plaintiffs' holdings effected by the cited amendment.

While the reorganization plan was adopted by more than the three-fourths majority stock vote required, since the particular plan of reorganization was not contemplated in the then existing charter, it became a question of consent on the part of the stockholders adversely affected, no matter how few in number.

Questions of notice, of agency, of representation, of consent, of laches, were all argued as arising upon the evidence in the case. To what extent any or all of them are actually involved it is not necessary here to say. It is true, however, that upon these questions, and upon the evidence, the court is not justified as a matter of law in a finding adverse to the plaintiffs.

For the purposes of this review, we must assume that the judgment of nonsuit was predicated upon insufficiency of evidence, since it was responsive to motions made for such defect at the conclusion of the plaintiffs' evidence and at the conclusion of all the evidence. The particular form of the judgment is immaterial. The evidence is sufficient to be submitted to the jury upon the cause of action stated in the complaint, and the judgment of involuntary nonsuit is

Reversed.