## JOHNSON v. FULLER et al.
### No. 7673.

Circuit Court of Appeals, Third Circuit.
June 27, 1941.

Arthur Garfield Hays, of New York City (John Schulman, Alan S. Hays, and Seymour M. Heilbron, all of New York City, on the brief), for appellant.

Francis H. Scheetz, Guy W. Rogers, Jr., and Robbert Gibbon, all of Philadelphia, Pa., (Evans, Bayard & Frick, of Philadelphia, Pa., on the brief), for appellees.

Before BIGGS, CLARK, and JONES, Circuit Judges.

BIGGS, Circuit Judge.

The appellant owns 100 shares of preferred stock of Curtis Publishing Company which he purchased in February, 1940, by paying $4,592 for it. He has sued in a class suit the company, a Pennsylvania corporation, and its directors and prays for an injunction to restrain the company from paying or declaring any dividends on prior preferred stock and from paying interest on or retiring debentures issued by the company pursuant to a plan of reorganization of its capital structure. The appellant also prays that the prior preferred stock and the debentures, as well as the common stock issued under the plan, be adjudged a nullity. In the alternative the appellant prays that the officers of the company pay to the company consideration

which the appellant alleges should have been received by it for the prior preferred stock, the debentures and the common stock, including an amount sufficient to protect the rights of the appellant and of all preferred stockholders similarly situated.

Prior to the reorganization of its capital structure and on December 31, 1939, the company had 900,000 shares of preferred stock outstanding of which 736,373 were held by the public and 163,627 shares were owned by the company. The company also had outstanding 1,800,000 shares of common stock without par value. Of these 1,730,101 were held by the public and 69,899 shares were owned by the company. The preferred stock (as distinguished from the prior preferred stock created by the recapitalization) is entitled to a cumulative annual dividend of $7, is entitled to $100 per share on liquidation and is callable at $120 per share. In either event all accumulated, unpaid and accrued dividends must be paid before anything may be paid or distributed to common stockholders. The company's contingent reserve and undivided profit, that is to say earned surplus as of December 31, 1939, was approximately $20,000,000. The company had approximately $8,690,000 in cash and additional quick assets in securities worth approximately $9,201,000. The company has a history of exceedingly successful operation. In the six years from 1927 to 1932 inclusive its net income averaged around $15,000,000 a year, an income rising to $21,500,000 in 1929, though falling to $5,500,000 in 1932. In 1933 net income dropped to $1,300,000. In 1934 it rose again to $5,900,000. In 1935 it was almost that figure. In 1936 it was better than $6,200,000. In 1937 it dropped to about $4,100,000; in 1938 to about $1,300,000, rising in 1939 approximately to $2,140,000. It should be noted that the lowest net income was received in 1933 and 1938 and that the income earned in the year 1939 was lower than in any other years from 1927 to 1939 inclusive save only 1933 and 1938.

No dividends have been paid on the common stock from 1932 on and in 1933 for the first time the full annual dividend of $7 was not paid on the preferred stock. Upon December 31, 1939, the dividend arrearages on the preferred stock aggregated $16.87½ per share and totalled $12,426,000. From 1933 to 1939 inclusive, full dividends not being paid on the preferred stock, the company earned $26,630,000 and paid out by way of dividends approximately $27,337,000 to preferred stockholders. It is plain therefore that the surplus which we have stated existed at the end of 1939 was created from profits earned prior to 1933.

The preferred stock which the appellant holds was issued in 1926 pursuant to a resolution of stockholders passed in December 1925. Part of that resolution (printed on the reverse side of each preferred stock certificate) provides: "So long as any of the Preferred Stock remains outstanding, the Company will not, without the consent of the holders of two-thirds of the Preferred Stock outstanding, create any mortgage debt or other obligation which would be entitled to payment out of the assets of the corporation prior to the Preferred Stock, excepting only such obligations as may be incurred in the ordinary and usual course of business, not secured by a lien upon the Company's property, and excepting also purchase money obligations given in connection with the acquisition of new property, nor shall the Company, without such consent, create any other issue of stock which shall in any way impair the rights of the holders of the present issue of Preferred Stock."

In the latter part of the year 1939 the company, through its directors, proposed to its stockholders a plan for the reorganization of its capital structure. The plan proposed would have reduced substantially the dividend requirements of the preferred stock and met with strenuous objection from certain holders of preferred stock including various institutions and trust companies holding stock in fiduciary capacities. Negotiations ensued between the representatives of the company and of these organizations. The plan of reorganization of capital structure which was carried into effect evolved from these negotiations.

The appellant attaches much importance to the fact that directors owned, and own, a very substantial portion of the common stock and that they procured the plan He also points out that the company spent over $6,000,000 in purchasing its own shares of stock both common and preferred prior to the recapitalization. From 1933 to 1939 inclusive the company purchased over 60,000 shares of its common stock and over twice this number of shares of preferred stock. The appellant argues that

the recapitalization was for the benefit of the common stockholders who were the management and that so much preferred stock was purchased (and cancelled under the plan) to increase the interest of the common stockholders in the management. We shall deal with these contentions more specifically at a later point in this opinion.

The plan of reorganization which was put into effect is a comparatively simple one. For each share of preferred stock surrendered, the company gave in exchange a new fifteen year 3% debenture in face amount of $10, one share of new prior preferred stock, and 2½ shares of common stock. The 177,580 shares of preferred stock and 66,959 shares of common stock owned by the company on April 19, 1940, were cancelled. The new prior preferred stock bears a dividend rate of $4 per share. Of this sum $3 is cumulative and $1 is payable and cumulative only to the extent earned. The new prior preferred stock has equal voting rights share and share alike with the new common stock. If six of the quarterly fixed dividends are omitted for any reason, the prior preferred has the right to elect two directors. The prior preferred stock has priority over the preferred and common stock as to dividends and on liquidation and its liquidation value is $65 per share. It is callable at $75 per share.

The fifteen year debentures are callable at the option of the company on thirty days' notice at a price equal to their face value and accrued interest. The plan provides for the creation of a sinking fund amounting to $250,000 per annum to retire the debentures. So long as any debentures are outstanding the company cannot mortgage or pledge any of its assets without consent of the holders of two-thirds of the outstanding debentures except by way of purchase money obligations or in renewal of previously secured obligations.

The plan of recapitalization as submitted to stockholders contains a statement of why recapitalization is desirable. It was pointed out that the dividend arrearages on the preferred stock were substantial, amounting to over $19 a share and totalling nearly $14,000,000 as of April 1, 1940. The discussion of the plan submitted to stockholders stated that it was to the best interest of the company and its "owner-stockholders that interest and cumulative dividend needs be kept within the Company's ability to earn under business conditions as they now exist.", and "* * * there is every reasonable expectation that the company can make uninterrupted regular dividend payments on the new Prior Preferred Stock, and it is hoped that this stock will be considered a sound investment. The distribution of Common Stock to present Preferred Stockholders who exchange will give them a chance to participate in any future prosperity."

The stated capital of the company, which was $30,000,000, was restated at $22,775,800, the difference being created by the transfer of $7,224,200 to surplus. As a matter of bookkeeping the debentures were charged against this item as they were issued. The cost of the 177,580 shares of its preferred stock and 66,959 shares of its common stock owned by the company and cancelled was charged against surplus. Naturally, the issuance of the prior preferred stock in return for the preferred stock reduced the authorized amount of preferred stock. The amount of common stock was more than doubled by the creation of 1,806,050 more shares so that the plan could be carried out.

A meeting of the stockholders called on July 2, 1940, ratified and approved the plan of reorganization and the necessary charter amendments. Two-thirds of the preferred stock and a majority of the common stock voted in favor of the plan and the amendments. 722,420 shares of preferred stock held by over 12,000 stockholders entitled to vote, 524,991 shares of preferred stock, about 72% of it voted for the plan and the amendments. 26,693 shares of preferred stock, about 4%, were voted against the plan and the amendments. 170,736 shares of preferred stock, approximately 24%, were not represented at the meeting and did not vote. From the foregoing figures it is apparent that of the shares voted, about 95% were voted in favor of and about 5% were voted against the plan and the amendments.

If all holders of preferred stock who were also holders of common stock are excluded from the calculation, 302,686 shares of preferred stock held by 6,169 stockholders voted on the plan and the amendments. Of these shares, 280,147, or 92%, held by 5,556, or 90%, of the stockholders were voted in favor of the plan and the amendments. 22,539 shares or

8% held by 613 or 10% of the stockholders were voted against the plan and amendments. There were also 145,053 shares of preferred stock held by 5,004 stockholders owning only preferred stock which were not voted at the meeting.

Of the shares of preferred stock which have not been exchanged pursuant to the plan (excluding those held by employees and foreign holders), 47,654 shares are now held by 1,709 stockholders who can be identified as stockholders of record on April 30, 1940 (the record date for determining those stockholders entitled to vote at the special meeting of stockholders held July 2, 1940). Of these shares, 29,624 or 66.2% of the class were held by 1,093 stockholders, or approximately 63.9%, and were not voted at the meeting. 9,837 shares, or 20.6% of the class were held by 420, or 24.6%, of the shareholders, and were voted in favor of the adoption of the plan and amendments. 8,193 shares, or approximately 17.2% of the class held by 196 stockholders, or 11.5% of the stockholders, were voted against the adoption of the plan and the amendments. The appellant himself appeared at the meeting and voted against the adoption of the plan and against the amendments.

Upon August 15, 1940, the plan was declared operative by the Board of Directors and notices to that effect were mailed to stockholders. Upon October 25th a first dividend was declared on the prior preferred stock, payable January 1, 1941, to stockholders of record December 5, 1940. On November 27th the appellant started his action in the court below. The learned District Judge found that the plan was a valid one and did not violate the rights of the appellant as a preferred stockholder. The question of laches raised as a defense was not passed upon by the court below. The appeal at bar followed. We have stated the facts this fully to the end that the issues involved may be entirely apparent.

■ The appellant raises four objections to the plan of recapitalization which are really one. He contends that the plan violates his right to be accorded equality and parity with his fellow preferred stockholders in the assets and property of the company and that he and those of his class have been deprived by the consummation of the plan of preferential rights in the company's capital and, in effect, of their right to dividends already accrued because the company can pay dividends on the prior preferred stock without paying dividends on the preferred stock. It is necessary therefore to test the appellant's rights against the contract between the company and its preferred stockholders largely embodied in that portion of the resolution creating the preferred stock which we have quoted. The contract sets forth specific limitations imposed upon the company in regard to changing the rights of the preferred stockholders. It must also be borne in mind that the class of preferred stock of which the appellant holds a hundred shares is still in existence and that no attempt was made to obliterate the accrued and accumulated dividends which as of October 1, 1940, amounted to $21.87½ per share of preferred stock. On that day the company paid a dividend on the preferred stock at the rate of 75¢ per share, reducing the accumulation of accrued dividends to $21.12½ per share. It is true that the appellant's right to share in the assets of the corporation upon liquidation has been substantially altered for the prior preferred stock is given a right which is paramount to that of the preferred stockholders to share first in the assets of the company in liquidation after outstanding indebtedness has been paid. The issuance of the debentures equally affects this right of the appellant to share in the assets of the corporation upon liquidation. It is also true that the dividends upon the prior preferred stock are given priority of payment over dividends upon the preferred stock which accrued after the consummation of the reclassification. The appellees contend that these disabilities are no more than the appellant bargained for as a preferred stockholder, pointing out that the contract between the company and himself, embodied in the resolution creating the preferred stock, provides specifically that by the consent of two-thirds of the preferred stock outstanding the company may create other issues of stock which may impair the rights of the holders of the preferred stock and that he may be preferred as to dividends only over common stockholders. The appellees contend that the appellant has no vested right in priority under his contract with the company except as to those unpaid dividends which accrued prior to the completion of the plan and that he must look for the payment of these dividends to funds lawfully created for that purpose. Under the

decisions we do not doubt that his right to the accumulated and unpaid dividends is a vested right.

The appellees rely upon numerous decisions in states other than Pennsylvania. No Pennsylvania decision is cited on this point in any of the briefs. The questions presented have been discussed more extensively in the courts of Delaware than elsewhere and therefore we will deal with the Delaware cases first. In Morris v. American Public Utilities Co., 14 Del.Ch. 136, 122 A. 696, it was held by the Court of Chancery of Delaware that in the absence of some enabling charter provision a proposed amendment to the charter of a corporation intended to create new classes of preferred stock and cancelling accumulated dividends could not be sustained. Speaking of accumulated dividends upon the preferred stock the learned Chancellor made it plain that the right to payment had become a vested right and a present property interest and that while enjoyment might be deferred by the directors of the corporation in the legitimate exercise of their business discretion, such deferment could not impair the status of the preferred stockholder to assert his right when the earnings of the corporation were such as to justify the declaration of a dividend. The Chancellor also pointed out that while preferred stockholders may be required to await the contingency of adequate earnings, this will not deprive them of a status like to that of creditors as against the common stockholder. It should be borne in mind that the cited case arose prior to the 1927 amendment (by 35 Del.Laws. c. 85, § 10) to Section 26 of the Delaware Corporation Law (See Rev.Code of 1915, § 1940) which purports to authorize reclassifications similar to that at bar under the law of Delaware.

In Penington v. Commonwealth Hotel Construction Corp., 17 Del.Ch. 394, 155 A. 514, 75 A.L.R. 1136, the Supreme Court of Delaware held that upon the liquidation of a corporation, preferred stockholders were entitled to receive unpaid accrued dividends even though the assets did not include any profits resulting from the corporate venture. Dividends were held to accrue until the appointment of the receivers.

Two more recent decisions of the Supreme Court of Delaware, Keller v. Wilson & Co., 21 Del.Ch. 391, 190 A. 115, and Consolidated Film Industries, Inc., v. Johnson, 197 A. 489, now require consideration. In the Keller case the court decided that preferred stockholders had a vested right in accrued cumulative dividends and that the act previously referred to [1] amending Section 26 to permit a corporation to amend its charter to destroy the rights of a stockholder to dividends accrued and unpaid could not be construed to operate retroactively. Chief Justice Layton stated in the opinion in the cited case (page 125 of 190 A.), "We are of opinion, therefore, that the amendment of the corporate charter, in so far as it assumed to destroy the rights of the complainants to dividends accrued upon their stock up to the time of the accomplishment of the amendment, is null and void. Accordingly, the arrears of such dividends accumulated upon their stock must be paid to them before distribution may be made to the holders of the common stock." It should be noted that the company had issued and outstanding preferred stock, Class A stock and common stock. The complainant, a holder of Class A stock, sought an injunction to prevent any dividends being paid upon the common stock until the accumulated and unpaid dividends had been paid upon the Class A stock. This relief was granted.

In the case of Consolidated Film Industries, Inc., the court again passed upon the reserved power of the state, exercised through its legislature, to alter or amend the provisions of a certificate of incorporation and to wipe out accrued cumulative dividends on preferred stock by reclassification into common stock and new preference stock. The circumstances were similar to those of the Keller case except for the fact that the corporation was created after the 1927 amendment (See note 1, supra) and not before it as was Wilson & Company. Consolidated Film Industries, Inc., proposed an amendment to its certificate of incorporation which by reclassification of stock would have cancelled dividends accrued on its cumulative preferred shares. An injunction granted by the court below was sustained, Chief Justice Layton stating, (page 493 of 197 A.) "It is argued that the reservation of the right to amend, alter or change the

---

[1] In connection with the cited case see Rev.Code 1915, Sections 1996 and 1940, as amended by 35 Delaware Laws, c. 85, Section 10, and by 38 Delaware Laws, c. 91, Section 3.

provisions of the certificate of incorporation, and the subjection of all rights of stockholders to the reservation of power, makes the right of the appellee contingent or expectant, and, therefore, subject to cancellation.

"The language of this provision is no broader than that of section 26 of the Corporation Law, as amended. It is not, in any degree, so perspicuous and definite. If, as we have held, section 26 operates prospectively and gives no power to cancel dividends on cumulative preferred stock accrued through time, clearly the charter provision can have no greater significance or meaning.

\*　\*　\*　\*　\*

"Many interrelations of the State, the corporation, and the shareholders may be changed. But he, who contends that the State has conferred a power upon corporations, by charter amendment, to change such a substantial contractual right as the right to dividends on cumulative preferred stock accrued under the contract through time, should be able to point to statutory language so clear and precise as to permit of no reasonable doubt that a retrospective operation was intended."

In the very recent case of Shanik v. White Sewing Machine Corp., —— Del.Ch. ——, 19 A.2d 831, in which the appellant in the case at bar was the intervenor, the Supreme Court of Delaware passed upon a reclassification plan very similar to that under consideration in the case at bar. Again Section 26 of the Delaware Corporation Law was involved. The Vice-Chancellor had dismissed the bill of complaint, —— Del.Ch. ——, 15 A.2d 169. On appeal this decision was affirmed despite the fact that the intervenor in those proceedings raised apparently the same objections to the plan as those he raises in the case at bar. In the cited case in the Supreme Court of Delaware, Judge Rodney, referring to the decisions in Morris v. American Public Utilities Co., Penington v. Commonwealth Hotel Construction Corp., and Consolidated Film Industries v. Johnson, with approval, stated, (page 835 of 19 A.2d) "The court refused to restrain the payment of dividends on the newly created prior preferred stock before payment on what had theretofore been the preference stock, holding that the only charter preference of dividends was a priority of payment before any payment of dividends should be made upon common stock. The court was explicit in its treatment, as a severable question, of the right to disturb accumulated dividends in arrear, which had accumulated on cumulative preferred stock. The court held the existence of accumulated dividends as a present property interest in the person entitled and that such person as against the common stockholder was, in substance, a creditor, and that as against the consent of the holder the right to accumulated dividends could not be destroyed. It was this attempt, in the Morris case, to destroy the right to accumulated dividends in arrear, that furnishes the only discernible distinction between that case and the present. In the present case there is no attempt to destroy the accumulated dividends in arrear, but the right to such dividends is maintained and retained by the holders of the former preference stock who are nonassenters to the plan of recapitalization." [2]

Such are the Delaware decisions upon this subject. They correspond with those of other jurisdictions. In Ainsworth v. Southwestern Drug Corporation, 95 F.2d 172, the Circuit Court of Appeals for the Fifth Circuit held that an appellant relying upon the provisions of Article 1538h, Vernon's Ann.Civ.St.Tex., could not restrain the payment of dividends on a new prior preferred stock despite the fact that there were unpaid cumulative dividends upon the preferred stock held by the appellant. The charter provisions were substantially the same as in the case at bar and the terms of the reclassification were almost identical with those under consideration. See, also, Yoakam v. Providence Biltmore Hotel Co., D.C., 34 F.2d 533. To substantially the same effect are General Inv. Co. v. American Hide & Leather Co., 98 N.J.Eq. 326, 129 A. 244, 44 A.L.R. 60; Kreicker v. Naylor Pipe Co., 374 Ill. 364, 29 N.E.2d 502; and Blumenthal v. Di Giorgio Fruit Corp., 30 Cal.App.2d 11, 85 P.2d 580. The decisions in Patterson v. Durham Hosiery Mills, 214 N.C. 806, 200 S.E. 906, and Patterson v. Mills, 216 N.C. 728, 6 S.E.2d 531, may be distinguished from the case at bar and the cited cases upon the charter provisions of the respective companies and the conditions upon which the

---

[2] In the Shanik case, Judge Rodney referring to the instant case in the court below (see 36 F.Supp. 744) stated that the instant case was strongly in point and seemingly impossible to distinguish.

preferred stock was issued to the complainants.

The articles of amendment to the articles of incorporation effecting the reclassification do provide in Section 4 as the appellant points out that, "No dividends shall be declared or paid on the Preferred Stock or Common Stock until the current quarterly first dividend and all accumulated first dividends and all earned contingent dividends then unpaid on the Prior Preferred Stock shall have been paid or set aside for payment." The amendments were made under Article VIII of the "Business Corporation Law of 1933" of Pennsylvania. See 15 P.S.Section 2852—801(4). The section provides that a business corporation may amend its charter "* * * To increase or diminish its authorized capital stock, or to reclassify the same by changing the number, par value, designations, preferences, or relative, participating, optional or other special rights of the shares, or the qualifications, limitations, or restrictions of such rights, or by changing shares with par value into shares without par value, or shares without par value into shares with par value, either with or without increasing or decreasing the number of shares; and in any and as many other respects as desired, provided that the articles, as so amended, would be authorized by this act as original articles of incorporation." It will be observed that this language is almost identical with that of Section 26 of the Delaware Corporation Law, as amended by Section 3, c. 91, Vol. 38 of the Laws of Delaware. It is also almost the same as the provisions of Sections 8623-14 and 8623-15 of the General Code of Ohio which was under consideration by the Supreme Court of Ohio in Johnson v. Lamprecht, 133 Ohio St. 567, 15 N.E.2d 127, and is not unlike the provisions of the statutes which were under consideration by the Supreme Court of Illinois in Kreicker v. Naylor Pipe Co., supra. See Smith-Hurd Stats. c. 32, Sections 157.2 et seq., 157.52, 157.163; Smith-Hurd Stat.1931, c. 32, Sections 6(4), 59, 61.

■ Assuming, as we must, that the resolution creating the preferred stock, passed on December 16, 1925, constituted an essential part of the contract between the corporation and the holders of preferred stock we can perceive no reason why the company with the consent of more than two-thirds of the holders of preferred stock was not entitled to create prior preferred stock, issue additional shares of common stock and the debentures. In this connection it is well to remember that the resolution of December 16, 1925, creating the preferred stock provides in part, "No dividend shall be declared or paid on the Common Stock until the current quarterly dividend on the Preferred Stock, as well as all accumulated or defaulted dividends thereon, shall have been either paid or set aside." The preference as to the payment of dividends secured to the holders of the preferred stock, including the appellant, clearly is limited by the clause of the resolution which we have just quoted.

The decision of the Court of Common Pleas of Philadelphia County in Harvey v. National Drug Company, 30 Pa.Dist. & Co.R. 318, while distinguishable upon its facts from the case at bar, none the less is highly persuasive. The Harvey case does afford an illuminating illustration of the view taken by a Pennsylvania court of the operation of the reserved powers of the Commonwealth of Pennsylvania in regard to amendments of articles of incorporation to the end that stock may be reclassified. In his opinion Judge Alessandroni states that a Pennsylvania corporation organized prior to the Business Corporation Law of 1933, 15 P.S.Section 2852—801(4), could amend its charter so long as no injustice was done to the incorporators in violation of Article I, Section 17 of the Pennsylvania Constitution, and permitted the exchange of 6% cumulative participating preferred shares for 7% cumulative nonparticipating preferred shares of an equal par value and the cancellation of all accumulated dividends on the old preferred shares by a dividend partly in cash and partly in the new preferred shares. The court made reference to the case of Keller v. Wilson & Co., supra, and cases closely allied to it, citing, pages 330, 331 of the report in 30 Pa.Dist. & Co.R., numerous decisions, some of which we have not referred to in this opinion, supporting the doctrine of the exercise of reserved powers of a state in connection with charter amendments affecting classifications of corporate stock.

■ The appellant cites 15 P.S.Section 2852—603(c) and apparently concedes that if shares be exchanged the consideration for the new shares may lawfully be the consideration originally received for the shares exchanged. He contends, however, that the provisions of the statute refer only

to the exchange of a whole class of stock and therefore are inapplicable to the circumstances of the case at bar where a substantial number of shares of preferred stock have not been exchanged. We are unable to see the force of this argument. The statute referred to provides for expressly the exchange of stock for stock and unless the exchange be in derogation of the rights of the shareholders because of inherent lack of equity in the plan of reclassification or unless the exchange be of such a nature as to create a capital liability to the company without corresponding consideration to the company, there is no reason why the plan of reclassification should be enjoined. It is clear that the plan of reclassification does not create capital liability to the company without an adequate consideration in return. We come therefore to a consideration of the second question, viz., whether the plan of reclassification is so unfair in its effect that as a practical matter it compels the holder of preferred stock to exchange his stock in accordance with the terms of the plan.

█ The appellant lays great emphasis upon the contention that the policy of management adopted by the directors was weighted in favor of the common stockholder. The appellant cites as illustrative the fact that in the seven years from 1933 to 1939 inclusive, the corporation expended a sum in excess of $6,000,000 in the purchase of its own preferred and common stock. It is a fact that in the years from 1927 to 1939 inclusive, the company spent over five and a half million dollars in purchasing its preferred stock. We cannot say that the expenditure by the company of large sums in the purchase of its own stock was not a reasonable exercise of business discretion by its directors. In fact this question is not properly before us for the business policies of the company in the past cannot be adjudicated in the case at bar. It should be remembered, however, that the company on July 1, 1940, paid a dividend at the rate of $1 a share on the preferred stock and on October 1, 1940, paid another dividend of 75¢ on that stock. In the light of these circumstances we conclude that the company has shown little disposition in the immediate past to neglect the payment of dividends on the preferred stock. In making this statement we are not unaware of the fact that on January 1, 1941, the company declared and subsequently paid a dividend of 75¢ a share on the prior preferred stock.

While the accumulated dividends of the preferred stockholders under the reclassification plan are junior to both the fixed and earned accumulated dividends of the prior preferred stock and, of course, are junior also to the payment of interest upon the debentures and their sinking fund requirements, none the less the dividends due to the preferred stockholders remain senior in right of payment to dividends upon the common stock. As we have already stated, if the holder of a share of the preferred stock exchanged his stock in accordance with the reclassification plan he received a $10 debenture, plus a share of the prior preferred stock with a $3 cumulative dividend, with an additional $1 payable and cumulative if earned, plus two and a half shares of common stock. We cannot say that there is any element of compulsion exerted upon the holder of preferred stock to exchange his share and receive the new securities under the reclassification. That element, if it exists at all, must lie in the fact that dividends may be paid to the prior preferred stockholders without any corresponding reduction in the cumulative dividends now due the preferred stockholders. It may be calculated of course that if the sum of $4 is paid on 722,420 shares of prior preferred stock and $216,000 is paid as interest on the debentures and additional sinking fund requirement of the debentures be taken into consideration, the corporation must earn net income in excess of $3,350,000 before any sum can be paid as dividends on the preferred stock. Yet in the first three-quarters of the year 1940 the net income of the company exceeded $2,600,000, and if we assume as does one of the appellant's exhibits that the net earnings of the company in the immediate future will be in excess of $5,000,000 a year, the sum of a million and a half dollars will be available to pay arrearage of dividends upon 63,621 shares of preferred stock. Such payment must be made before the common stock can receive anything.

█ In the light of all of these circumstances we think that the appellant and the other preferred stockholders are in an excellent position. The plan of reclassification, leaving the preferred stock and the accumulated dividends thereon intact, is not unfair to preferred stockholders. Nor

can it be said fairly that there is any real element of compulsion in the plan or that the reclassification was planned and the company will be run for the benefit of its common stockholders. Accordingly we can see no error in the judgment of the court below.

In view of what we have stated, it is unnecessary to pass upon the defense of laches raised by the appellees.

The judgment of the court below is affirmed.