## Jackson v. The Curtis Publishing Co.

*Bellwoar & Rich,* for plaintiff.
*Philip H. Strubing,* for defendant.

MacNeille, P. J., April 28, 1942.—This is an action in assumpsit instituted by plaintiff to recover from defendant the amount that plaintiff had paid to defendant on account of the purchase price of certain shares of preferred stock of the defendant company sold to him by the defendant company.

At the trial a directed verdict in favor of plaintiff was entered for the full amount of the claim, and on behalf of defendant there has been filed a motion for judgment n. o. v.

In April of 1931, while plaintiff was in the employ of the defendant company, he received an offer which was made by it to its employees, and as a result of that offer he entered into an agreement with the defendant company to purchase 100 shares of its preferred stock. The preferred stock that he thus purchased was treasury stock, and the holders of said preferred stock were entitled to receive cumulative dividends thereon at the rate of $7 per share per annum before any dividends were paid upon the common stock, and in the event of bankruptcy, insolvency, or voluntary or involuntary dissolution of the company, the holders of the preferred stock, at the time plaintiff subscribed to it, were entitled to receive in distribution of the assets $100 a share and all accumulated, unpaid, and accrued dividends thereon before any sum be paid or any assets distributed among the holders of the common stock.

At the time that plaintiff subscribed to the stock there was a written agreement entered into incorporating the terms of the sale, which provided, inter alia, that 10 cents a share a week should be deducted from plaintiff's salary to be credited to his stock purchase, and also that any dividends paid on the stock were to be so credited. It was further provided that the stock would be delivered to the subscriber at the expiration of five years from the date of the subscription, providing that it had been fully paid for at that time.

Plaintiff was discharged on January 1, 1932, and in 1935 the original purchase agreement was amended by

correspondence, whereby plaintiff agreed to pay to the company 10 cents per share per week, and also agreed to have the dividends as paid credited on account of the purchase price. Interest was to be charged on unpaid balances. In 1938 the agreement was further orally amended so as to permit plaintiff to make payments by applying in payment thereof the dividends on 60 additional shares of preferred stock that he owned of the defendant company and the certificates for which had been delivered to him.

At the time plaintiff subscribed for his 100 shares of preferred stock there were no other stocks or debentures authorized or outstanding having any prior claim to the assets or earnings of the defendant corporation.

Plaintiff continued to make payments until July of 1940 when the defendant corporation changed its capital structure by issuing prior preferred stock and debentures, both of which were granted rights to earnings and to assets on liquidation in preference to the preferred stock for which plaintiff had subscribed.

The plan of reorganization and recapitalization also provided for the issuance, to holders of preferred stock who desired to make the exchange, of the following securities for each share of preferred stock surrendered:

$10 principal amount of 15 year 3% debenture.

1 share $4 dividend prior preferred stock, of which dividend $3 per annum is cumulative and $1 per annum payable and cumulative to the extent earned; having equal voting rights with common stock.

2½ shares common stock—fractional shares to be represented by script exchangeable in combination for whole shares.

Exchanges of securities on this basis under the plan of reorganization and recapitalization were entirely optional and voluntary on the part of the holders of preferred stock. Any holder of preferred stock who chose to retain his stock could do so and *no change in*

*the preferences of that stock was effected.* A substantial amount of that stock has not been exchanged and is outstanding in the hands of the public.

Plaintiff seeks to avoid paying the balance due on his subscription for the preferred stock on the ground that defendant violated its contract by changing the status of the preferred stock, and cites the case of Lane v. Coin Machine Manufacturing Co., 69 Pa. Superior Ct. 373, as authority for his contention. In that case the defendant corporation agreed to sell plaintiff five shares of treasury stock "of the par value of $100 per share" for the sum of $500 payable in instalments. No stock was issued to plaintiff or for his account or in his name. Before plaintiff had completed the required payments defendant reduced the par value of the shares to $10. At the time of this reduction plaintiff was not a stockholder and thus he did not learn of the change until after the corporate action had been taken. He sued to recover the payments he had made on the ground that defendant could not perform its part of the bargain. Defendant *admitted* that it could not deliver the kind of shares described in the purchase agreement, but contended that delivery of shares of $10 par value would constitute substantial performance on its part. The Superior Court sustained a judgment for plaintiff.

The Lane case is distinguishable from this case (1) because this defendant, after the adoption of the plan of reorganization and recapitalization, could still deliver to plaintiff precisely the same stock that plaintiff bought, and (2) because the transaction here was not an executory contract to sell, as in the Lane case, but a sale executed on the part of defendant, by virtue of which plaintiff became a stockholder in the company.

The transaction between plaintiff and defendant was an outright sale of specific shares of stock, which were issued in plaintiff's name. True, he did not pay for them in full and became indebted to the company for

the purchase price, and as security for that debt the company retained the shares, with power of sale in the usual form attached. But those facts do not alter the nature of the transaction. From the practical standpoint the corporation acted in two capacities, (1) as seller, and (2) as banker. The result of its action as seller was that plaintiff became a member of the company. The legal effect of the deal was exactly the same as if plaintiff had bought the stock outright from defendant and had defendant deliver the stock certificate registered in his name and with power of sale attached, direct to his bank to be held as collateral security for money advanced to pay for it.

It could not possibly be said that merely because plaintiff did not see the stock certificate he did not become a stockholder and was not bound by the terms of the instrument he purchased. Thousands of persons become shareholders in corporations every day on purchases through brokers or through their banks, without seeing the stock certificates. Furthermore, plaintiff owned additional shares of the preferred stock outright and had possession of the certificates on which were endorsed the provisions in regard to the preferences to which the holders of said stock were entitled, and he knew the provisions of said stock regarding preferences, etc., which were also recited in a letter from the company to him dated November 30, 1926.

The evidence disclosed that plaintiff delivered a sales power covering the stock; that the stock was "held against the obligation to pay under the agreement"; that as a stockholder of record plaintiff received notice of the meeting at which the plan was adopted (which he did not attend) ; and that the offer of exchange made to preferred shareholders under the plan was open to plaintiff. These factors are totally inconsistent with any theory that the transaction was an executory contract on the part of defendant to sell unspecified shares of a given class of security. On the contrary, they show

that under the agreement plaintiff immediately enjoyed all the rights and privileges of a shareholder except the right to possession of the share certificate, which was held as collateral security for his indebtedness. He was a shareholder, and as such received dividends, was entitled to notice of, and to vote at, stockholders' meetings, and enjoyed the privilege, open only to preferred stockholders of defendant, of exchanging his stock under the plan.

It is to be noted also that the parties themselves recognized this situation and acted upon it. See defendant's exhibit no. 2, which is a letter from defendant, dated May 17, 1935, asking plaintiff to sign the sales power, and defendant's exhibit no. 3, which is plaintiff's reply, dated May 20, 1935, and in which he says, inter alia, "I also enclose the sales power duly executed."

The preferred stock provided by its terms that no prior liens or stock should be created without the consent of two thirds of the holders. In compliance with this provision, on July 2, 1940, the stockholders duly and properly adopted the above-mentioned plan of reorganization and recapitalization under the provisions of its charter and the Business Corporation Law of May 5, 1933, P. L. 364.

There is no question that the plan was legally adopted by the requisite vote of the preferred and common stockholders and in accordance with the Business Corporation Law of 1933. Indeed, the opinion of the Circuit Court of Appeals upholding the validity of the plan specifically states that it was adopted and became valid under that law: Johnson v. Fuller et al., 121 F. (2d) 618 (C. C. A. 3, 1941). In the district court (Johnson v. Fuller et al., 36 Fed. Supp. 744, 750), it is said:

"It is to be borne in mind that the plan does not purport to extinguish any of the rights of the preferred stock nor to require that stock be converted into any other stock, nor to require its exchange for anything in substitution."

At the time plaintiff repudiated his obligations under the contract, in September of 1940, after the plan had been adopted, defendant could have turned over to plaintiff the identical certificate for 100 shares of preferred stock which had been issued in his name. Only plaintiff's failure to pay the amount due on his indebtedness stood in the way. When he defaulted in his payments, defendant sold his stock on the New York Stock Exchange on October 15, 1940, under its power of sale.

For the reasons indicated the rule for judgment for defendant notwithstanding the verdict in this case is made absolute. Accordingly, judgment is entered for defendant.