COMMERCIAL NATIONAL BANK OF CHARLOTTE, N. C., EXECUTOR AND
TRUSTEE UNDER THE WILL OF WINSTON DAVIS ADAMS, DECEASED, v.
MOORESVILLE COTTON MILLS, C. P. McNEELY, ROBERT LAS-
SITER, E. F. BOHANNON, JR., ZEB V. TURLINGTON, JOHN F.
MATHESON, C. W. GUNTER, E. E. EDMISTON, G. W. TAYLOR, C. C.
JOHNSTON, J. L. HARRIS, MRS. S. C. WILLIAMS, R. M. HANES,
JULIAN PRICE, GEO. W. MOUNTCASTLE AND J. F. CRAVEN,

and

COMMERCIAL NATIONAL BANK, AS TRUSTEE UNDER THE WILL OF L. W.
SANDERS, DECEASED, v. MOORESVILLE COTTON MILLS, C. P. Mc-
NEELY, ROBERT LASSITER, E. F. BOHANNON, JR., ZEB V. TUR-
LINGTON, JOHN F. MATHESON, C. W. GUNTER, E. E. EDMISTON,
G. W. TAYLOR, C. C. JOHNSTON, J. L. HARRIS, MRS. S. C. WIL-
LIAMS, R. M. HANES, JULIAN PRICE, GEO. W. MOUNTCASTLE
AND J. F. CRAVEN.

(Filed 25 November, 1942.)

**1. Corporations §§ 8, 38—**

C. S., 1217, gives the Superior Court, in a receivership, power to ap-
prove a plan for the reorganization of a corporation, which provides for
the readjustment of the company's capital structure, when approved by a
majority in interest of the stockholders; but it cannot affect either the
rights of dissenting stockholders not parties to the receivership, or the
vested rights of parties to the proceedings unless they fail to appeal from
judgment entered therein.

**2. Corporations §§ 8, 39, 40—**

A reorganized corporation must deal with its dissenting stockholders in
accordance with the contract existing between the corporation and such
stockholders; and the fact that dissenting stockholders profit and secure
a preference by the action of the majority will not divest them of their
legal rights, when properly asserted.

**3. Corporations §§ 8, 40—**

While a dissenting stockholder, desiring to prevent the reorganization
of the corporation, must act with reasonable promptness; this does not
prevent a stockholder from asserting his rights under the contract con-
tained in his preferred stock, in lieu of attacking the plan of reorganiza-
tion.

**4. Corporations § 8: Fiduciaries § 2—**

In the reorganization of a corporation under C. S., 1217, executors,
trustees, and other fiduciaries, holding stock in the corporation, not only
have the right, but it is their duty to assert whatever legal rights they
may have, which in their opinion will be for the best interest of the
estates involved.

**5. Same—**

No cause of action arose under the provisions contained in the preferred
stock until the declaration of a dividend, in violation of the terms thereof,
and an action by a preferred stockholder to enjoin said payment is not

barred by the three-year statute of limitations, unless instituted more than three years after the declaration thereof.

APPEAL by defendant Mooresville Cotton Mills from *Hamilton, Special Judge,* at June Term, 1942, of MECKLENBURG.

Civil actions to restrain the payment of a dividend on common stock issued by Mooresville Cotton Mills, pursuant to the provisions of a plan of reorganization of the corporation, until the defendant corporation complies with the agreements contained in its certificates of preferred stock held by the plaintiffs, which they allege entitle them to a preference in the payment of dividends and distribution of principal.

By consent of all parties, the above entitled actions were consolidated for trial; trial by jury was expressly waived and the case submitted to the court upon the record and an agreed statement of facts.

The facts pertinent to a disposition of this appeal are as follows:

1. L. W. Sanders died a resident of Mecklenburg County, N. C., 28 June, 1927, leaving a last will and testament, and the Commercial National Bank of Charlotte was named executor and trustee therein; said bank duly qualified in such capacity 13 July, 1927, and is now holding the residue of the estate of L. W. Sanders, including the certificates of preferred stock now in controversy in this action.

2. Winston Davis Adams died a resident of Mecklenburg County, N. C., on 18 August, 1929, leaving a last will and testament, and the Commercial National Bank of Charlotte was named executor and trustee therein; said bank has duly qualified in such capacity and now holds, as such executor and trustee, the certificates of preferred stock in controversy in this action.

3. At the time of his death, the said L. W. Sanders was the owner of twelve shares of "new prior preferred" stock of the defendant corporation, and the certificate contains the following provisions: "RESOLVED, FIRST: That the Mooresville Cotton Mills issue 5,000 shares of preferred stock to be called 'new prior preferred stock' of the par value of $100.00 per share, aggregating $500,000.00 to be issued as of the date of May 1, 1927, which shall bear dividends annually at the fixed rate of seven per cent, payable quarterly on the first day of August, November, February and May in each year, and that said dividends shall be cumulative and shall be paid in full including all arrearages before any dividends whatsoever shall be set apart or paid upon the common stock of the corporation or the second series of preferred stock or the third series of preferred stock, and that the said cumulative dividends shall be a first lien upon the earnings of the said corporation until the same and all arrearages thereof shall be paid in full. . . . RESOLVED, THIRD: That during the life of the new prior preferred stock, or while any portion thereof is outstanding, the Mooresville Cotton

Mills shall not execute any deed of trust, mortgage or other lien or encumbrance upon the property of the corporation nor shall the corporation issue any other stock or class of stock which shall have any preference over or equality with this issue of preferred stock in the earnings, property or assets of the corporation." At the time of his death, L. W. Sanders was also the owner of thirteen shares of the Third Series of Preferred Stock and seventy-three shares of the common stock of the corporation. The holders of the Third Series of Preferred Stock are likewise entitled to seven per cent dividend annually, cumulative and payable before any dividend shall be payable on common stock.

4. At the time of his death, Winston Davis Adams was the owner of one hundred shares of the "new prior preferred stock" and one hundred shares of the common stock of the defendant corporation.

5. In May, 1932, an action was instituted in the Superior Court of Iredell County by Hunter Manufacturing and Commission Company against the Mooresville Cotton Mills, and, pursuant to a decree in said action, the Mooresville Cotton Mills was placed in the hands of a receiver, who operated the business until 5 August, 1933. The plaintiffs herein were not parties to the receivership proceedings.

6. On 4 August, 1933, a special meeting of the stockholders of the Mooresville Cotton Mills was held to consider and pass upon a plan of reorganization. The plan, briefly stated, is as follows: (a) Pay all debts of the corporation, except those to Hunter Manufacturing and Commission Company; (b) the receiver, W. B. Cole, shall execute a deed reconveying the property to Mooresville Cotton Mills, and the corporation, under and by virtue of a decree of court, as provided in C. S., 1217, will execute certain bonds of the corporation to the Hunter Manufacturing Co., securing them by a deed of trust on the real estate and physical property of the corporation; (c) the holders of common stock shall be issued fifty per cent of their present holdings in new no par value common stock, in lieu of their present shares of no par value common stock; (d) the holders of second and third preferred stock shall be issued sixty-six and two-thirds per cent of the number of shares of their present holdings in new no par value common stock, in lieu of their preferred stock and accumulated dividends; (e) the holders of prior preferred stock in the corporation, shall be issued one hundred per cent of the number of shares of their present holdings in new no par value common stock, in lieu of their prior preferred stock and accumulated and unpaid dividends. The plan was adopted by an affirmative vote in excess of two-thirds of the outstanding shares of stock. One thousand six hundred and thirty-seven shares were voted against the plan and the votes so recorded, including the shares held by the plaintiffs herein. Plaintiffs have at all times refused to surrender for exchange, in accord with the plan of reorganization, the preferred shares held by them.

7. The plan of reorganization was approved by the court on 5 August, 1933.

8. No dividends have been paid on the prior preferred stock since 1 November, 1930, and none paid on the third preferred stock since 1 January, 1926.

9. On 4 December, 1941, the directors of the defendant corporation declared a dividend of $1.00 per share on the thirty thousand (30,000) shares of common stock issued and outstanding.

10. After the institution of these actions, a consent decree was entered in both cases on 27 December, 1941, containing the following provisions: (a) Approving the execution of a bond by the defendant, Mooresville Cotton Mills, in the sum of $30,000.00, to protect the plaintiffs' rights herein; (b) authorizing the payment of the dividend as declared; (c) agreeing that if plaintiffs are held to be preferred stockholders that judgment may be entered against the Mooresville Cotton Mills for the par value of the stock and such dividends as the court shall hold have accumulated upon said stock to the date of judgment; and (d) entering a voluntary nonsuit as to all defendants except the Mooresville Cotton Mills.

11. From the judgment holding that the plaintiffs do retain their status as preferred stockholders, in accordance with the terms set forth in said certificates, and awarding judgment in favor of plaintiffs in accord with the consent decrees entered 27 December, 1941, the defendant appeals and assigns error.

*Robinson & Jones for plaintiff.*
*Z. V. Turlington and Cochran & McCleneghan for defendant.*

DENNY, J.  Does C. S., sec. 1217, give the Superior Court the power in a receivership proceedings to approve a plan of reorganization of a corporation, when approved by a majority in interest of the stockholders of the corporation, whereby the stockholders are reduced and the capital structure changed?  If so, are dissenting stockholders, not parties to the receivership proceedings, bound by the decree approving the plan of reorganization?

An examination of the above statute discloses that authority is given the corporation, when a majority in interest of the stockholders of the corporation have agreed upon a plan of reorganization and a resumption by it of the management and control of its property and business, with the consent of the court, upon a reconveyance to it of its property and franchises, either by deed or decree of court, to mortgage its property for an amount necessary for the purposes of reorganization; and to issue bonds, or other evidences of indebtedness, or additional stock, or

both, and use the same for the full or partial payment of creditors who will accept the same, or otherwise dispose of the same for the purposes of the reorganization. There is nothing in the statute to suggest that an adjustment of equities among stockholders is contemplated. However, the fact that the plan of reorganization provides for the readjustment of the capital structure does not make the plan of reorganization void or ineffective if approved by a majority in interest of the stockholders of the corporation with the consent of the court, but it cannot affect the rights of dissenting stockholders not parties to the receivership proceedings. Neither would it affect the vested rights of parties to the proceedings unless they failed to appeal from the judgment entered therein.

The general rule seems to be stated in Fletcher's Cyc. on Corporations, Vol. 11, sec. 5296, p. 732, as follows: "The contract between a corporation and the holders of its preferred stock cannot be changed, or their rights in any way impaired, without their consent, by any subsequent action of the corporation." Therefore, the reorganized corporation must deal with its dissenting stockholders in accord with the contract existing between the corporation and such stockholders. The fact that the dissenting stockholders may actually obtain a preference over other stockholders holding similar stock who consent to the plan of reorganization, is not controlling. The further fact that the dissenting stockholders have profited by the action of the majority in the reorganization of the corporation will not divest them of their legal rights when properly asserted. It appears from the record that the defendant corporation, under its plan of reorganization, has been operating profitably and that the majority in interest of the stockholders of the corporation, by their action in reorganizing it, has greatly enhanced the value of their holdings. However, the plaintiff in these cases, acting in its fiduciary capacity, as executor and trustee, not only has the right but the duty to assert whatever legal rights it may have which in its opinion will be for the best interests of the estates involved.

The weight of authority seems to be to the effect that a dissenting stockholder desiring to prevent the reorganization of a corporation under a proposed plan, must act with reasonable promptness. This, however, does not prevent a stockholder from asserting his rights under the contract contained in his preferred stock certificates, in lieu of attacking the plan of reorganization. 13 Am. Jur., sec. 1225, p. 1118. In view of the provisions of the statute pursuant to which this corporation was reorganized, the plaintiffs had no cause of action until the declaration of a dividend on the common stock of the corporation on 4 December, 1941, without first making provision for the payment of the cumulative and unpaid dividends on the preferred stock held by plaintiffs, in accordance with the provisions contained in said preferred stock. *Patterson v. Hosiery Mills,* 214 N. C., 806, 200 S. E., 906; *Patterson*

v. *Henrietta Mills,* 216 N. C., 728, 6 S. E. (2d), 531; *Clark v. Henrietta Mills,* 219 N. C., 1, 12 S. E. (2d), 682; *Patterson v. Henrietta Mills,* 219 N. C., 7, 12 S. E. (2d), 686.

These actions were brought on 24 December, 1941, and are not barred by the three-year statute of limitations. *Clark v. Henrietta Mills, supra.*

We think the judgment of the court below, holding that plaintiffs retain their status as preferred stockholders and awarding judgment in favor of plaintiffs, in accord with the consent decrees entered 27 December, 1941, is correct.

The judgment of the court below is
Affirmed.